**John B. DURFEE, Plaintiff in Error,**

v.

**Lowana M. DURFEE, Defendant in Error.**

No. 42923.

Supreme Court of Oklahoma.

Dec. 16, 1969.

Rehearing Denied March 3, 1970.

**162**

William M. Taylor, Angus A. Davidson, W. E. Green and Farmer, Woolsey, Flippo & Bailey, Tulsa, for plaintiff in error.

Ungerman, Grabel, Ungerman & Leiter, E. P. Litchfield, Tulsa, for defendant in error.

BLACKBIRD, Justice.

In the trial court, defendant in error, appearing there as "plaintiff", and plaintiff in error, appearing there as "defendant", were each granted a divorce from the other on the ground of incompatibility. This appeal, in which our continued reference to the parties will be by their trial court designations, is directed only at the division of the parties' jointly acquired property, ordered in the divorce decree.

At the trial, defendant, with the apparent agreement of the attorneys for both parties, furnished the court with a written statement entitled: "ASSETS OF JOHN B. DURFEE AND LOWANA DURFEE AS OF OCTOBER 31, 1967", listing the various items, and values, of such property. On this list, the parties' home, together with its contents, was given a value of $50,000.00, and one of the parties' insurance policies, which had been

issued by the Northwestern Mutual Life Insurance Company, as well as 58 shares of their stock in National Bank of Tulsa, and a certain 100 shares of stock in a company called "Reading & Bates, Incorporated", and one of the parties' automobiles, a 1965 Model Chevrolet Impala Coupe, were all shown to be in the name of the plaintiff.

According to the brief transcript of the trial proceedings furnished this Court, that court, in announcing his judgment from the bench, found that plaintiff and defendant were of the ages of 58 and 64 years, respectively; that defendant is an attorney, with an income "varying between $12,000 plus a year to $30,000 plus a year"; and that plaintiff was not employed "although she has some training and is capable of working as a substitute school teacher". In his said announcement, the trial judge, referring to the above described writing as the "financial statement", continued as follows:

"The Court finds that the assets, pursuant to the stipulation and the listing previously furnished to the Court, are substantially as set out therein, and the Court will make a finding that the residence has a value of $25,000 and the furniture and fixtures have a value of $5,000, and the financial statement would be modified accordingly."

As a part of the division of the parties' jointly acquired property, plaintiff was awarded the home, and its contents (except certain items awarded defendant), together with the above-mentioned bank stock, Reading & Bates stock, and the 1965 Model Chevrolet; and, in the words of the trial court's oral announcement of his judgment: " * * * the plaintiff, Lowana Durfee, will be awarded as *additional property settlement* * * * $40,000." (Emphasis ours) Defendant was awarded the remainder of the parties' jointly acquired property, including a 1967 Model Chevrolet Sedan.

After the case was submitted to the court for judgment, or on November 9, 1967, defendant filed a motion for a new trial, with his own "AFFIDAVIT * * * FOR NEW TRIAL OR FOR VACATION OF JUDGMENT IN PART", and certain writings, referred to as "Exhibits A and B", attached thereto. Exhibit A was merely a copy of the above-mentioned list of the parties' assets and/or property as of October 31, 1967. Defendant's Affidavit represented, among other things in substance and effect, that, in the divorce decree, the court had arrived at an improper and inequitable division of the parties' property by considering the home and its contents to be worth only $30,000.00, instead of the $50,000.00 appearing on the October 31st list of assets entitled (as aforesaid) "Exhibit A".

Exhibit B consisted of certain so-called "summaries" purporting to list the items of income and expenditures of defendant's law practice for the months of January through October, 1967, and contemplated to show that, for said 10-month period, his net income from that source was only $4,137.91. Relating to the subject of his income, defendant's Affidavit alleged, in substance, that (before the decree was entered) plaintiff's attorney had made the representation that defendant's net income was "from $12,000 to $30,000 * * *" per year, and further alleged " * * * this may have influenced the court" in giving plaintiff "a greater and inequitable" share of the parties' property than that to which she was entitled. Defendant's Affidavit also alleged, among other things:

"9. That the plaintiff, Mrs. Durfee, along with a sister and brother, are the owners of an estate in remainder of a 160-acre farm in Alfalfa County, Oklahoma, as well as a residence in Tulsa, Tulsa County, Oklahoma, located at 3121 South Boston Court of said city, county and state, which will vest in her and her brother and sister upon the death of their mother, now aged 80 years, and this property, along with a savings account in Ponca City Building and Loan Association of Tulsa, Oklahoma, and a checking account in a bank in Cherokee,

Oklahoma in the name of the plaintiff's mother and the plaintiff as joint tenants, will, upon the death of the plaintiff's mother, vest in the plaintiff, Mrs. Durfee, and enrich her to the extent of from forty to fifty thousand dollars."

At the hearing on defendant's motion for a new trial, he sought to introduce in evidence, and/or have considered by the court, a writing containing a list of the parties' properties, with their valuations, caused to be made by him as of·a date after the court had announced his judgment on the merits of the divorce action, and which writing was entitled: "LIQUID ASSETS OF JOHN B. DURFEE AND LOWANA DURFEE AS OF DECEMBER 14, 1967". This writing also contained a "SUGGESTED PROPERTY SETTLEMENT BETWEEN MR. AND MRS. DURFEE", setting forth therein alternative plans of settlement, which contemplated that defendant pay plaintiff certain sums, considerably less than $40,000.00, in monthly installments over a period of years.

Plaintiff's counsel objected to the trial court's consideration of any such "Exhibits" (to the extent that they differed from the evidence and representation of facts upon which the decree was based), and the court sustained this objection. It appears from the court's remarks from the bench that he also refused to consider the admitted fact that plaintiff had derived a vested remainder interest, with a sister and brother, in the aforementioned Alfalfa County farm and Tulsa residence, subject to a life estate in plaintiff's 80-year-old mother, and her expectancy of inheriting balances in the aforementioned Cherokee bank, and Building and Loan Association, accounts.

At the close of the hearing, the court made its order overruling defendant's motion for a new trial. From said order and/or judgment, he perfected the present appeal.

Defendant first complains of the trial court's refusal, at the above described hearing on his motion for a new trial, to allow him to introduce in evidence the afore-described writings attached to his motion for new trial as Exhibits A and B, which, as above indicated, represented the value of the parties' home and its contents as $50,000.00, and were calculated to show that his net income from his law practice averages less than $500.00 per month. He also complains of said court's refusal to consider, as a factor in the settlement between the parties, plaintiff's above described vested, and contingent, but expected, inheritance from her 80-year-old mother.

█ In the colloquy between the attorneys and the trial judge, the latter (in justification of his attitude toward consideration of such things as evidence at that late date) remarked that defendant's income, and the value of the parties' home, and its contents, as represented on the so-called "Exhibits" attached to defendant's motion, were not "what the evidence (at the trial) disclosed", and, concerning plaintiff's afore-described inheritance from her mother, he stated: "There was no evidence concerning it whatsoever in the course of the trial", and "This is not involved in this case." The trial judge also recalled that the only real or personal property value he had considered (in rendering judgment) different from those shown on the October 31, 1967, list of the parties' assets (except those of the two Chevrolets, whose titles were in the parties' individual names, and which he stated, in substance, he had not considered as a part of the list) was that of the parties' home, and its contents; and he stated there was "independent evidence presented * * * as to that." Whether this remark refers to statements the parties' attorneys made to the court, just before judgment was pronounced, as to values to which certain of their potential witnesses would testify, or whether it refers to evidence at the trial, not incorporated in the record before us, we cannot say that the trial court's hereinbefore quoted finding that the parties' home, and its contents, were worth sums less than the $50,000.00, set forth in the October 31st

"ASSETS" list, was incorrect or constituted error. In this connection, notice Jahn v. Jahn, Okl., 276 P.2d 225, 227. Considering the home, and its contents, as worth (instead of the total sum of $50,000.-00) a total sum of $30,000.00, as set forth in the trial court's above-quoted oral findings, the combined value of all of the parties' jointly acquired property (except the two Chevrolets, which the court said he didn't consider), as shown by said October 31, 1967, list, is $119,996.91. Of course, one-half of this amount is only $59,998.30, while the value of the parties' real and personal property awarded plaintiff, less the home's contents that were partially divided (as shown by that statement: home, $25,000; cash value of one insurance policy, $917.95; bank and corporation stock, $4,656.50), is $30,574.45, which, added to the cash payment of $40,000.00 awarded her, totals $70,574.45.

■ In his argument, defendant attributes this disparity in the parties' respective shares of the jointly acquired property to an attempt, on the part of the trial judge, to provide them with sufficient assets to enable them to live the rest of their lives in the manner to which they became accustomed while married. Considerations of maintenance, or financial support, should not be given controlling importance in such a property division, as distinguished from alimony. See the discussion in Bouma v. Bouma, Okl., 439 P.2d 198, 200, in which we recognized that, in such divisions, consideration should be given to which of the parties' efforts contributed to the accumulation of the property. Thus, though we recognize that the "equitable division" referred to in 12 O.S.1961, § 1275, does not necessarily mean an "equal division" (see the discussion in McCoy v. McCoy, 429 P.2d 999, 1004), that a wife's entitlement to such a division does not necessarily derive from any participation by her in the business world, as distinguished from domestic activities, and that the trial court has wide discretion in such matters, since the record does not disclose that plaintiff contributed directly to the accumu-

lation of the parties' property, we think an equitable division of it would be effected by reducing the amount of defendant's cash payment to her from the $40,000.00 decreed by the trial court, to $30,000.00. To that extent, therefore, the decree and judgment of the trial court is hereby modified, and, as thus modified, is hereby affirmed.

■ We consider it unnecessary to lengthen this opinion by describing in detail most of the other arguments advanced by defendant under his Propositions "II" and "III". Suffice it to say, that we have thoroughly considered, and examined, them, and have concluded that they are without merit. However, in the last part of both his brief in chief, and his reply brief, and also in pleadings thereafter filed herein, defendant has raised the question of whether or not he should be given credit for payments made under a previous order of this Court entered herein on April 29, 1968, that "During the pendency of this appeal or until the further order of this court * * *" he pay plaintiff the sum of $300.00 per month as temporary support pendente lite.

In the pleading defendant filed herein on August 13, 1969, and in an affidavit filed some days later, he represents that plaintiff married a certain named man of financial "means" on August 8, 1969, and that defendant has paid plaintiff the sum of $4,575.00 in temporary support pendente lite, and he asks, in the affidavit, that "said sum of $4,575.00 * * * be charged against any sum of money awarded * * (plaintiff) by this court from the Appeal on file herein"; and he prays in his motion, that this Court take cognizance of plaintiff's remarriage on August 8, 1969; that, as of that date, he be relieved of his obligations under the order of April 29, 1968; and that plaintiff's application for an additional attorney's fee on appeal be denied.

In the hope of obtaining, among other things, confirmation of plaintiff's remarriage, and of the amount that had been

paid under this Court's above mentioned order of April 29, 1968, this Court, on November 5, 1969, directed plaintiff to respond to defendant's above mentioned pleadings filed herein during August, 1969. In the response plaintiff thereafter filed on November 13, 1969, she admitted her remarriage on August 8, 1969, but furnished no information as to the status, or total amount, of defendant's payments under the order of April 29, 1968, for her temporary support pendente lite. Be that as it may, however, we are of the opinion that plaintiff is entitled to no such payments, under said order, after August 8, 1969, and do hereby terminate all obligations of defendant to make any such payments for any period subsequent to that date. Accordingly, we hold that defendant is entitled to credit for any and all sums of temporary support pendente lite he has paid plaintiff for any and all periods since August 8, 1969, upon the thirty-thousand-dollar payment required of him by the above described modification of the trial court's decree.

Plaintiff's application for an additional fee for services her attorneys have rendered her in connection with the present appeal is hereby denied; and each of the attorneys must look to his own client for the discharge of any and all obligations for additional attorney fees.

All the Justices concur.