Sam Carl TIGERT, Appellant,

v.

Sharon Kay TIGERT, Appellee.

No. 50393.

Court of Appeals of Oklahoma, Division No. 1.

March 6, 1979.

Rehearing Denied April 10, 1979.

Certiorari Denied May 14, 1979.

Released for Publication By Order of Court of Appeals May 17, 1979.

Gotcher, Gotcher & Gotcher, McAlester, for appellant.

Stamper, Otis & Burrage by Michael Burrage, Antlers, for appellee.

BOX, Judge:

An appeal by Sam Carl Tigert, plaintiff in the action below, from the portions of a divorce decree dividing the parties' property and granting him a divorce from Sharon Kay Tigert, defendant below, on the ground of incompatibility rather than adultery.

The parties were married on April 13, 1968, and have two minor children. It appears from the testimony that their marriage has been a rocky, sometimes violent one, and that on Easter Sunday, April 18, 1976, the plaintiff learned of an adulterous affair by the defendant. The next day the defendant filed an action for divorce, but she dismissed it three days later at the plaintiff's request. On April 24, 1976, she moved back into their mobile home and they attempted a reconciliation.

The reconciliation was short-lived, lasting only until May 7 or 8, 1976, and on May 10 the plaintiff filed a petition for divorce, alleging both incompatibility and adultery as grounds. The defendant answered, asserting that the adultery had been condoned, and cross-petitioned for divorce, alleging incompatibility and extreme cruelty. Trial was held on September 7, 1976, and the trial court granted the divorce, taking under advisement the matters of custody of the children, child support, property settlement, and the ground for divorce.

On November 5, 1976, the court entered its decree, which awarded custody of the children and child support to the defendant, divided the property, and granted the divorce to the plaintiff on the ground of incompatibility. The plaintiff has perfected this appeal.

The plaintiff's first proposition is that the trial court erred in awarding the defendant $3000 as her share of the jointly-acquired property. The trial court found the following items to be jointly-acquired property, with equity values as listed:

| | |
|---|---|
| Mobile home | $2,250.00 |
| 10 head of steers | –0– |
| 1975 Chevrolet pickup | 435.35 |
| Gooseneck trailer | 1,700.00 |
| Income tax refund | 458.00 |
| Insurance proceeds | 600.00 |
| | $5,443.35 |

The plaintiff received all of this property, and in addition received a 1972 Chevrolet pickup (the value of which was not given, but on which there was an indebtedness of $434.72), all of the household furniture except for some gifts and the children's furniture, and a color television set. The controversy on this issue is over an alleged $5000 debt owed by the plaintiff to his mother, which the plaintiff contends must be taken into account.

The only reference to this debt in the record is the plaintiff's single statement that he owed a personal debt of $5000 to his mother for some cattle bought in 1973. His mother was a witness at the trial, but she was not asked and did not testify about the debt. The defendant did not dispute the debt, but she also was not asked and did not testify about it. The plaintiff asserts that, taking the undisputed debt into account, it was error for the trial court to award the defendant $3000. The trial court made no finding as to the debt and did not mention it in the decree. That, the defendant argues, was an implied finding that no such indebtedness existed.

In a divorce case a trial court must make an equitable division of property acquired during joint coverture. 12 O.S.

Supp.1976, § 1278. This is true regardless of which spouse is granted the divorce. *Holeman v. Holeman,* Okl., 459 P.2d 611. An equitable division, however, does not require an equal division. *E. g., McCoy v. McCoy,* Okl., 429 P.2d 999. For two examples we refer to *Baker v. Baker,* Okl., 546 P.2d 1325, and *Seelig v. Seelig,* Okl., 460 P.2d 433, in which the wife received far more one-sided awards than could be the case on the facts before us today. In the third paragraph of the syllabus in *Reed v. Reed,* 456 P.2d 529, 530, the Oklahoma Supreme Court held:

> "In making an 'equitable division' of property in a divorce action, the trial court is vested with a wide discretion; and, before this court will reverse an order adjusting property rights in a divorce action, it must clearly appear that the trial court abused its discretion."

We find the award of $3000 to the defendant in this case to be reasonable, whether or not the trial court believed that the debt existed and whether or not the debt is taken into account, and we therefore affirm it.

The plaintiff's second proposition is that the trial court erred in not granting him a divorce on the ground of adultery. The defendant admitted one adulterous relationship, but raised the defense of condonation. The plaintiff seems to argue that the condonation was ineffective, and in any event he argues that the offense of adultery was revived by the defendant's conduct after the reconciliation.

Condonation, or condonement, has been variously defined in Oklahoma cases. In *Kostachek v. Kostachek,* 40 Okl. 747, 140 P. 1021, 1022, we find this language:

> "Condonement is forgiveness conditioned on future good conduct. . . .
>
> " '. . . Condonement is forgiveness, with an implied condition that injury shall not be repeated, and that the party shall be treated with conjugal kindness . . . .' "

In *Panther v. Panther,* 147 Okl. 131, 295 P. 219, 221, it is defined in this way:

> " 'Condonation, in the law of divorce, means the pardon of an offense, the voluntary overlooking or implied forgiveness of an offense by treating the offender as if it has not been committed.' "

And in *Every v. Every,* 293 P.2d 612, 614 (per curiam), the Supreme Court used this definition:

> "Condonation in the law of divorce is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness."

Furthermore, " 'Condonation must be free, voluntary, and not induced by duress or fraud,' " *Panther v. Panther,* 295 P. at 221; it must not have been " 'procured by unconscientious and fraudulent practices,' " *id.*; it must not have been " 'obtained by force and violence,' " *Kostachek v. Kostachek,* 140 P. at 1022; and it must not have been the " 'result of fraud or mistake.' " *Id.*

■■ From the above authorities we can say that a condonation of a marital offense is a freely given pardon or forgiveness, carrying with it implied conditions that the errant spouse not repeat the offense, that the errant spouse treat the other with "conjugal kindness," and that the errant spouse maintain "good conduct" in the future. In addition, a condonation may be predicated upon an express condition, in which case the expressed condition must be fulfilled. *Kostachek v. Kostachek,* 140 P. at 1022.

■ Even without an affirmative pardon or forgiveness, a condonation may be implied in law. When the parties resume cohabitation and sexual intercourse after the condoning spouse learns of the offense, and there are no further offenses, condonation is implied. In *Owsley v. Owsley,* 121 Okl. 259, 249 P. 692, 693, the Oklahoma Supreme Court stated:

> "[T]he trial court finds that with knowledge of these repeated acts of adultery the plaintiff, Owsley, even after filing his petition in the instant case, had himself had repeated acts of intercourse with the defendant, and the court concludes as a matter of law that these repeated acts of

intercourse by the plaintiff with the defendant, knowing that she had been guilty of adultery, had fully condoned the alleged offense. This finding of the trial court is sustained by the record. Howsoever reprehensible her conduct from the record appears to be, the rules of law governing the rights of the plaintiff under this state of facts are binding upon the court. A court of equity in such a situation is required to leave the parties where it finds them."

Adultery was also held to have been condoned by cohabitation in *Edgell v. Edgell*, 120 Okl. 281, 251 P. 43 (per curiam), and *Fowler v. Fowler*, 119 Okl. 95, 248 P. 629. *See also Penn v. Penn*, 37 Okl. 650, 133 P. 207 (per curiam) (adultery condoned by cohabitation, but revived). In this way acts of incompatibility and cruelty were both held to have been condoned in *Every v. Every*, Okl., 293 P.2d 612 (per curiam), and false accusations of larceny were held condoned, though later revived, in *Estee v. Estee*, 34 Okl. 305, 125 P. 455 (per curiam).

▮ In the case before us both parties testified that it was the plaintiff who asked the defendant to dismiss her divorce proceedings and return home. Both parties likewise testified that the plaintiff knew of the defendant's adultery and that they had sexual relations during the reconciliation. The trial court found that the plaintiff condoned the defendant's adultery. We find that the evidence amply supports this finding and that the condonation was effective.

Condonation having been shown, its effect was to bar a divorce for adultery. In *Panther v. Panther*, 295 P. at 221, the Supreme Court stated:

"[A]s a general rule, the condonation of a marital offense deprives the condoning spouse of the right of thereafter seeking a divorce for the condoned offense."

The exception to this general rule is when the condoned offense is revived, as the plaintiff argues happened in this case.

▮ A condoned marital offense may be revived by a breach of either an express condition or an implied condition. In the case before us the plaintiff asserts that he

accepted the defendant back into their home upon express promises by her, which, being breached, revived the adultery. In his brief in chief to this court he states, "The Appellant condoned adultery but imposed the condition that the Appellee act as a proper and faithful wife." In his reply brief: "The Appellant offered to forgive the Appellee on the condition that their differences be reconciled." And: "Appellant only offered to condone the adultery if Appellee would become a better wife." And: "Appellant agreed to forgive the adultery *if* Appellee would dismiss divorce proceedings and reconcile." There is no basis for any of these assertions in the transcript. We note that the plaintiff's statement in his brief in chief here also appeared in a brief to the trial court, which was made a part of the record on appeal. We concur in the trial court's rejection of this argument.

A breach of an implied condition of the condonation occurs with a repetition of the condoned offense, the commission of a different marital offense, or with misconduct that would not in itself be sufficient to constitute a ground for divorce. A failure to treat the condoning spouse with "conjugal kindness" or to maintain "good conduct" would fall within one of the latter two categories.

We are not faced with an issue of revival by a repetition of the condoned offense. The defendant testified that she did not commit any further adultery, and the plaintiff states in his brief that he "has no other evidence of the same." The plaintiff does not allege that the defendant committed any specific marital offense after the reconciliation sufficient in itself to constitute a ground for divorce and to revive the condoned adultery. He does, however, argue that the defendant's conduct amounted to such a failure to treat him with "conjugal kindness" as to revive the offense.

▮ In his brief the plaintiff refers us to 27A C.J.S. *Divorce* § 62c., at 215. Further in that section, at 217, we find this language used in reference to the revival of condoned acts of cruelty:

"The misconduct, however, must amount to more than slight acts of coldness, unkindness, or mere quarrelling, and must be so pronounced as to raise a reasonable probability that if the marriage relation is continued a new cause for divorce will arise." [Footnotes omitted.]

We see no good reason why the same principle should not apply when the condoned offense is adultery. Also, in § 62a. of 27A C.J.S. *Divorce*, at 213, which deals in general with the revival of a condoned offense either by a repetition of the offense or by the commission of a different offense, we find this language:

"Where the act relied on as constituting a breach of the condition of the condonation is due to the fault or connivance of the complaining party, the original offense is not revived." [Footnote omitted.]

We hold that this principle should also apply when the alleged breach is a failure of "conjugal kindness" or "good conduct."

The testimony before the trial court was conflicting on the reason for the failure of the parties' reconciliation attempt. The plaintiff testified at the trial that the defendant never really tried to make a go of the marriage and that their final breakup was caused by mysterious phone calls she would receive. He testified that she became quiet, withdrawn, and indifferent and would not care for the house. The defendant admitted the calls and the problems they caused, but denied that there was anything untoward about them. She introduced testimony that she kept a clean house, and she testified that she tried to make a go of the reconciliation. She claimed that his beating on her caused the reconciliation to fail. The plaintiff admitted committing several serious acts of violence against the defendant, including one shortly before they gave up the reconciliation attempt, but asserted that she always brought them on. In their testimony both parties admitted being partially at fault for the failure of the marriage and the reconciliation.

As authority for the asserted revival of the condoned adultery, the plaintiff cites *Estee v. Estee, Penn v. Penn*, and *Kostachek v. Kostachek*, all *supra*. These cases do not support the plaintiff's proposition. In *Estee* and *Penn* the condoned offenses were both revived by repetitions of the same offense. In *Kostachek* the condoned offense was revived by the breach of an express promise on which the condonation was conditioned and by the commission of acts of cruelty. The facts and allegations before us today are quite different from the ones involved in those cases.

The defense of condonation to an action for divorce dates back to the ecclesiastical courts of England. The rationale behind allowing the defense is that reconciliations will be encouraged and society's interest in the continuation of matrimonial relationships furthered by allowing the errant spouse some protection under the law when that spouse honestly seeks and is granted forgiveness and an opportunity to reform. The errant spouse must be faithful to the trust reposed by the forgiving spouse, however, and must be proper in future behavior, or the condoned offense will be revived. We would not have the errant spouse be free to flaunt the offense, repeat it, or otherwise refuse to put forth any effort to warrant the pardon granted. On the other hand, a condoned offense should not be lightly revived. We would likewise not have the condoning spouse be free to abuse or torment the errant spouse under threat of a divorce on the ground of a serious—but condoned—offense, all the while neglecting his or her own marital responsibilities.

We perceive it to be a common state of affairs that many men and women cannot live together without discord. Thus, in a case in which there is no repetition of the condoned offense or new offense, and the trial court finds that the circumstances finally bringing the unsuccessfully-reconciled parties before it amount to no greater marital discord than its experience tells it is common and that the discord does not stem from the condoned offense, or that the fault for the troubles since the condonation lies

as much with the complaining spouse as with the errant spouse, it should not grant a divorce on the ground of the condoned offense. The condoned offense is not revived in such a case, even if the court finds reason to grant a divorce to the complaining spouse on another ground.

■ In the case before us the trial court found that the defendant's adultery had been condoned by the plaintiff. As the Supreme Court held in the second paragraph of the syllabus in *Meyers v. Central National Bank*, 183 Okl. 231, 80 P.2d 584, 584:

> "In an equity case the judgment of the trial court carries with it a finding of all facts necessary to support it which could have been found from the evidence, and judgment will not be set aside unless clearly against the weight of the evidence."

The trial court's decree therefore carries with it a finding that the defendant's conduct after the reconciliation was not of such a nature as to revive the condoned offense. We hold that the finding is not clearly against the weight of the evidence.

Our holding is reinforced by some of the opinions of the courts of our sister states. Rather than extend the length of this opinion by discussing in detail those we examined, we will simply cite three of them here: *Quagliano v. Quagliano*, 94 Ill.App.2d 233, 241–42, 236 N.E.2d 748, 752 (1968) (party asserting revival "must show that the subsequent misconduct was not provoked by

him"); *Goetz v. Goetz*, 180 Kan. 569, 577, 306 P.2d 167, 173 (1957) (drinking beer frequently, but not excessively, did not revive); *McLaughlin v. McLaughlin*, 244 S.C. 265, 275, 136 S.E.2d 537, 542 (1964) (losing temper did not revive).

■ Our last matter for disposition in this appeal is the defendant's motion for an additional attorney's fee. The trial court awarded her an attorney's fee of $350 for the divorce, and in her brief she requests an additional $500 for the defense of this appeal. Such a motion under 12 O.S.Supp. 1976, § 1276, made in the brief, is proper. *Dowdell v. Dowdell*, Okl., 463 P.2d 948; *see Lavender v. Lavender*, Okl., 435 P.2d 583. The plaintiff is granted her request for an additional attorney's fee of $500 for this appeal, to be taxed as costs and paid for by the plaintiff.

The judgment and decree of the trial court is hereby affirmed.

AFFIRMED WITH ADDITIONAL ATTORNEY'S FEE.

ROMANG, P. J., and REYNOLDS, J., concur.