Melvin Oland ALLEN, Appellant,

v.

Dolly L. ALLEN, Appellee.

No. 51699.

Court of Appeals of Oklahoma, Division No. 2.

Oct. 2, 1979.

Released for Publication by Order of Court of Appeals Nov. 1, 1979.

John R. Sprowls, Pauls Valley, for appellant.

Timothy K. Colbert, Sulphur, for appellee.

BRIGHTMIRE, Judge.

On May 13, 1977, after eight years of childless marriage, Melvin Allen asked the court to dissolve the incompatible union. His wife Dolly, for some reason not real clear, filed a cross-petition asking for the same relief on the identical ground—incompatibility—but seeking to blame the man entirely for the discord. The trial court granted only the woman a divorce, and of a net marital estate of minus $65,000 the woman was allotted assets worth about $10,000—roughly half of their total value and including half interest in two patents

(and in a patent pending) developed by her husband who was awarded property and debts having a net value of around minus $65,000. He appeals.

## I

■■■ His first contention—that the court should have granted both parties a divorce—is well taken. Incompatibility as a ground for divorce implies mutual, not unilateral, fault. *Hughes v. Hughes*, Okl., 363 P.2d 155 (1961). The court therefore erred in granting only the woman a divorce on the ground of incompatibility—an error the effect of which is mainly psychological since the granting of a divorce to only one party effectively dissolves the bonds.

## II

The man's second proposition—that the court abused his discretion in dividing the jointly acquired property—likewise has merit.

The unusual thing about the facts of this case is that the parties are insolvent. Existing cases offer little or no help in terms of what guidelines should be followed in equitably dividing such an estate. The relevant statute, 12 O.S.Supp.1978 § 1278, in its literal sense speaks only to a division of "property" acquired during the marriage and makes no specific reference to jointly acquired debts. On occasion courts have found it expedient to divide a marital estate based upon its net worth—a value achieved after subtracting liabilities from total asset value.[1] The effect of doing so, of course, is to divide the outstanding indebtedness.

■■■ Does fairness require, in the event of a bankrupt marriage, that there be an equitable division of jointly acquired liabilities as well as assets between the parties? We can think of no reason why there should not be. The nuptial relationship generally begins with an exchange of vows to embark on it for richer or poorer. Here it turned out, unfortunately, to be a poorer one to the extent that after eight years the couple had a deficit estate of about $65,000.

The stated facts and circumstances as to how the indebtedness was incurred are limited. In looking over an itemized list of creditors included in the record it appears that most of them furnished merchandise or services to a business. This ties into the man's testimony that during the marriage he, after considerable research, invented a product called a "Volt Minder" on which he obtained two patents. Through continued effort he developed an improvement of the product which became the subject of a patent pending. At some undisclosed time he began manufacturing and selling the article under the business name of Allen Control Company. Eventually the company assets were sold to Tulamco Corporation and a "bulk transfer" of his stock-in-trade along with manufacturing rights under the patents was made to the vendee for $3,500,000 payable in installments. Tulamco agreed to complete the patent pending and pay all creditors of Allen Control as an incident of the bulk sale transfer.

Tulamco, however, defaulted, charged that the transfer was fraudulent and refused to pay the creditors under the transfer as well as to complete work on the patent pending. Consequently, the creditors of Allen Control turned back to Allen for payment and some of them have sued him. Both Allen and his former wife sued Tulamco for breach of contract and the latter filed a cross-action asking damages for an alleged fraudulent bulk sales transfer. Allen had proposed a settlement but it had not been accepted at the time this case was heard.

According to Allen the time for perfecting the patent pending had expired at time of trial and since it no longer existed it was not property that could be divided.

The woman testified that while Allen was developing the Volt Minder—over a two or three year period—she supported him out of earnings from a beauty shop she ran. Al-

---

1. See *Stansberry v. Stansberry*, Okl., 580 P.2d 147 (1978); *Lavender v. Lavender*, Okl., 435 P.2d 583 (1967); *Helvey v. Helvey*, Okl., 262 P.2d 445 (1953); *Casey v. Casey*, 200 Okl. 313, 193 P.2d 567 (1948).

len, however, denied this and said he built the beauty shop and supported his wife. Until their pre-divorce separation the couple had been living on a cattle ranch they rented for $1,875 a month. At trial the woman said she lived in Texas and was employed as a beautician. And Allen? Well, he said he would have to move within a month after the trial because the ranch lease was about to expire and he was without a job.

### III

█ We think under these circumstances it was inequitable to give the woman a half interest in the patents and at the same time absolve her of any obligation to help clear up the debts created in an effort to develop the subject of the patents. And the same thing is true with regard to the other debts—each party should bear them in proportion to the amount of property received.

The decree is therefore modified to the extent of granting both parties a divorce and ordering Dolly L. Allen to assume and pay one-half of the jointly acquired indebtedness of the parties outstanding on the date of the divorce, and in all other respects the adjudication is affirmed.[2] Each party is to pay one-half the costs of this appeal and his or her own attorney's fee.

Affirmed as modified.

BACON, P. J., concurs in result.

NEPTUNE, J., concurs.

---

2. Allen complains about the court granting the woman a half interest in the expired patent pending, saying that it was error to award "property . . . no longer in existence."

The conclusion seems reasonable enough, but for the life of us we cannot figure out how Allen is harmed by the mistake. Half of nothing is nothing.