Debi TEEL, Plaintiff–Appellant,

v.

Raymond L. TEEL, Defendant–Appellee.

No. 66655.

Supreme Court of Oklahoma.

Dec. 21, 1988.

---

Sam P. Daniel, III, Stephen Q. Peters, Messrs. Short, Harris, Turner & Daniel, Tulsa, for plaintiff-appellant.

Bill R. Scarth, Messrs. Bassman, Mayberry & Scarth, Claremore, for defendant-appellee.

OPALA, Justice.

The issue presented on certiorari is whether the Court of Appeals' disposition is clearly contrary to the weight of the evidence and to the established principles of equity jurisprudence insofar as it allowed the husband to bear the sole responsibility for discharging a debt alleged to be spousal, which though confessed by the husband, was then in litigation contest between a third-party creditor and the wife. We answer in the affirmative.

## THE ANATOMY OF LITIGATION

Husband and wife were granted a divorce, their marital property came to be divided and the husband received custody of their minor child.[1] The wife appealed

---

1. A) The wife was awarded:

   1) a 1979 Audi 5000–S automobile with the husband responsible for any related indebtedness and to hold the wife harmless therefrom;

   2) various items of furniture;

   3) property in Haileyville, Oklahoma;

   4) savings account.

 B) The husband was awarded:

   1) a 9N Ford Tractor with related equipment;

   2) 1976 Datsun pickup;

   3) various items of furniture for the benefit of the minor child;

   4) various other items of furniture;

   5) capital stock and ownership of the husband's businesses and the responsibility for any related indebtedness and is to hold the wife harmless therefrom;

   6) interest in an oil lease;

only from the homestead's award to the husband. To the latter spouse the trial court allocated sole responsibility for discharging certain spousal debt.

In a separate civil action the husband's parents had sued both spouses to collect two unsecured promissory notes, claimed to have been a joint debt incurred by the parties for the construction of their home valued between $90,000 and $95,000. The father had allegedly loaned his son and daughter-in-law money for materials to build a home—the homestead in contest. A default judgment for $96,523.50 had been taken against the husband alone; the claim against the wife remained pending when the divorce was granted.[2]

■ On appeal the wife argued that because the homestead was unencumbered, the trial court erred in awarding the prop-

erty solely to the husband. She sought an equitable share of the homestead. The Court of Appeals (a) modified the decree by awarding her, in lieu of her interest in the homestead, a $45,000 money judgment, which was impressed as a lien upon that property, (b) affirmed the decretal provisions awarding the homestead to the husband and (c) left undisturbed the trial court's allocation to the husband of the sole responsibility for discharging the debt in favor of the parents. The court reasoned that because the homestead was unencumbered it was a fit subject for division, and neither the default judgment against the husband nor the wife's exposure to liability on the promissory notes then in dispute should have been considered by the trial court when reaching the homestead for division.[3] The wife was directed to contrib-

7) property in Canadian, Oklahoma;
8) checking account;
9) IRA account and insurance policy;
10) *the homestead, "free and clear of any and all claims" of the wife, "subject to any existing indebtedness relating thereto whether incurred by ... [the husband or his wife] or both of them, (and subject to the existing judgment, for which he shall be solely responsible and from which he shall save and hold ... [the wife] harmless)."*
C) The lake property was ordered sold and the proceeds equally divided.
D) The wife was not required to pay any child support and the husband was not required to pay any alimony.

2. Neither the promissory notes nor the proof of the default judgment was admitted into evidence at trial. None of this material was otherwise incorporated in the appellate record. The husband and wife state in their briefs on appeal that they had executed the promissory notes, the subject of a separate lawsuit culminating in a default judgment against the husband in the amount of $96,523.50 and still the source of potential liability to the wife who characterizes the transaction as a gift rather than a loan. We take notice of these facts. Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record. See *Womack v. City of Oklahoma City*, Okl., 726 P.2d 1178, 1181 [1986]; and *Timmons v. Royal Globe Ins.*, Okl., 713 P.2d 589, 592 [1986].

3. The Court of Appeals also affirmed the division of the remaining marital property and the award of custody of the minor child to the husband; it remanded the cause with directions to determine an amount of support which the

wife should contribute for her child. The court determined that:

1. the evidence was in conflict as to whether the husband's father "loaned" or "gave" purchase money for the homestead to the married couple;
2. any promissory notes were unsecured and could not be considered as a lien against the property;
3. the trial court erred by giving consideration in the division of property to a default judgment against the husband in the collateral litigation with his parents;
4. no judgment had yet been rendered against the wife;
5. the husband's parents were not parties to the divorce litigation and were not bound by the trial court's findings; and
6. the "debt" was irrelevant since the homestead was an unencumbered asset that should be equally divided.

The Court of Appeals noted that one volume was missing from the appellate record. Although the court stated that the missing volume was unnecessary to decide the appeal, one dissenter opined that the issues for review could not be adequately examined without this record. The Court of Appeals received the missing volume on *August 17, 1987*; it denied the husband's petition for rehearing on *August 24, 1987*. On rehearing, the husband urged the Court of Appeals to reconsider its decision since the missing record was not before that court when its opinion was promulgated. On certiorari, he argues that receipt of the missing record by the Court of Appeals did not mean the court actually considered it when denying his rehearing petition. We disagree. The missing record was pressed as a ground for the Court of Appeals to reconsider its opinion. Because the appellate

ute to their minor child's support.[4] The husband then sought corrective relief by certiorari.

## I

### THE LAW GOVERNING EQUITABLE DIVISION OF MARITAL PROPERTY

Oklahoma's statutory law requires marital property to be distributed in a just and reasonable manner.[5] The division may be accomplished either by severing the property in kind or by setting it apart to one party with compensation awarded to the other. A just and proper division of spousal assets means an "equitable" one.[6] The homestead must be treated in the same manner as other marital assets.[7] When the homestead is not separate property of either party, it may be awarded to one of them, with a compensating payment allowed in favor of the other being secured by a lien, if necessary.[8]

■ Our statutory scheme does not provide an *exact* verbal formula for distribution of the "net estate". It does not state explicitly whether *debts* as well as *assets* must be taken into account. The relevant statute, 12 O.S.Supp.1985 § 1278,[9] addresses itself only to a division of *property* acquired during the marriage; it makes no specific mention of jointly incurred obligations. Extant caselaw teaches that the net worth of marital property may be determined by subtracting the liabilities from the assets.[10] If there be debts against specific spousal assets, the trial court may make an award of the encumbered property to one party and order that the other be held harmless from any debt burdening that marital asset.[11]

---

court did not deny the husband's rehearing petition until after it had the critical record before it, we cannot say the appeal was not fairly considered in that court. Furthermore, we have carefully reviewed *the entire record* on certiorari.

4. Although the husband did not complain of the trial court's ruling which exonerated the wife from paying child support, the Court of Appeals *sua sponte* directed that the wife's child support obligation be adjudicated on remand. Because the wife did not seek further review of this decision, it is now the law of the case. A party seeking corrective relief from an adverse court of appeals' opinion should first petition that court for rehearing and, if unsuccessful, must then seek further review by certiorari in this court. *Johnson v. Wade,* Okl., 642 P.2d 255, 257–257 [1982].

5. The terms of 12 O.S.Supp.1985 § 1278 provide in pertinent part:
   "... As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties as may appear *just and reasonable,* by a *division* of the property *in kind,* or by *setting the same apart to one* of the parties, *and requiring the other thereof to be paid* such sum as may be just and proper to effect a fair and just division thereof...."
   [Emphasis supplied.]

6. In extant Oklahoma jurisprudence, the words "just" and "reasonable" in 12 O.S.Supp.1985 § 1278, *supra* note 5, are equivalent to "equitable", though not synonymous with "equal". *Stansberry v. Stansberry,* Okl., 580 P.2d 147, 150

[1978]; *Carter v. Carter,* 181 Okl. 204, 73 P.2d 404, 405 [1937]; and *Chamberlain v. Chamberlain,* 121 Okl. 145, 247 P. 684, 689 [1926]. Our caselaw holds that *equitable* division does not necessarily mean *equal* division. *Tigert v. Tigert,* Okl., 595 P.2d 815, 818 [1979]; *Durfee v. Durfee,* Okl., 465 P.2d 161, 165 [1970]; and *Williams v. Williams,* Okl., 428 P.2d 218, 222 [1967].

7. *Williams v. Williams, supra* note 6 at 222 and *Harden v. Harden,* 182 Okl. 364, 77 P.2d 721, 723 [1938].

8. *Glomset v. Glomset,* 196 Okl. 528, 166 P.2d 423, 424 [1946]; and *Gordon v. Gordon,* Okl., 461 P.2d 14, 16 [1969].

9. See *supra* note 5 for the pertinent terms of 12 O.S.Supp.1985 § 1278; see also *Allen v. Allen,* Okl.App., 601 P.2d 760, 761 [1979].

10. *Casey v. Casey,* 200 Okl. 313, 193 P.2d 567, 568 [1948]; *Allen v. Allen, supra* note 9 at 761; *Snelling v. Snelling,* Okl., 420 P.2d 872, 873 [1966]; *Stansberry v. Stansberry, supra* note 6 at 150; *Lavender v. Lavender,* Okl., 435 P.2d 583, 586 [1967]; and *Helvey v. Helvey,* Okl., 262 P.2d 445, 448 [1953].
    In *Casey v. Casey, supra* 193 P.2d at 568, the concept of net worth calls for subtraction of liabilities from assets *to determine the net* value of property available for equitable division. This was the trial court's premise in the present case.

11. *Snelling v. Snelling, supra* note 10 at 873; and *Armstrong v. Armstrong,* Okl., 462 P.2d 656, 659 [1969].

A divorce suit is one of equitable cognizance and the trial court has discretionary power to divide the marital estate.[12] The reviewing court will not disturb the division absent some abuse of discretion[13] or a finding that the nisi prius decision is clearly contrary to the weight of the evidence.[14]

In *Snelling v. Snelling*[15] the trial court awarded all marital assets to the husband and allocated to him the sole responsibility for discharging the spousal debts, while the wife received no property and was absolved from liability for any marital indebtedness. The wife sought a more favorable distribution on appeal. We affirmed the trial court's decision, because, once the parties' liabilities were subtracted from the value of their assets, there was nothing left for an award to the wife. The *record in Snelling clearly supported* the trial court's finding that the encumbrances on the property exceeded the assets and the parties were insolvent. The critical factor there was that the spousal debts were clearly identified by proof showing that the property was either mortgaged or assigned to the bank. The value of the marital estate was offset by the encumbrances against the spousal assets. In *West v. West*[16] the court stated that the party who relies on marital debts must prove their existence before the debt could be subtracted for computation of the spouses' net estate. The teaching of *Snelling* and *West* is that marital debts are available as an offset against conjugal property if the obligations are identified and clearly supported by the evidence.

## II

THE SOLE RESPONSIBILITY FOR DISCHARGING THE DEBT OF A POTENTIALLY SPOUSAL CHARACTER, WHICH WAS THEN IN LITIGATION AS TO THE WIFE'S LIABILITY, SHOULD NOT HAVE BEEN ALLOCATED TO THE HUSBAND

The only spousal asset in contest here—the homestead—was still the subject of collateral litigation to determine the wife's liability on two promissory notes *allegedly related* to its construction. The husband and his father testified at trial that the promissory notes were executed to cover loans for materials and labor used to construct the homestead. The husband expressed a sense of obligation to repay his parents for the various loans as well as gifts bestowed on him and his wife. In the schedule of assets submitted to the court, the husband listed various items of marital property and showed a debt in excess of the value of the promissory notes held by his parents. While the spouses admit executing the promissory notes, the instruments were neither introduced into evidence during the divorce proceedings nor made a part of the appellate record.[17] It is undisputed that the homestead itself was not burdened by a mortgage or any other lien securing the promissory notes in question. The decree indicates judicial notice had been taken—when the homestead came to be awarded to the husband—of the default judgment against him and of the wife's exposure to liability in collateral litigation with the third-party creditor.[18]

The evidence in the record neither shows proof of the wife's indebtedness to the third-party obligee nor a judgment deter-

12. *Johnson v. Johnson,* Okl., 674 P.2d 539, 544 [1983]; *Carpenter v. Carpenter,* Okl., 657 P.2d 646, 651 [1983]; *Peters v. Peters,* Okl., 539 P.2d 26, 27 [1975]; and *West v. West,* Okl., 268 P.2d 250, 253 [1954].

13. *Kiddie v. Kiddie,* Okl., 563 P.2d 139, 140–141 [1977]; *Carpenter v. Carpenter, supra* note 12 at 651; and *Reed v. Reed,* Okl., 456 P.2d 529, 533 [1969].

14. *Tigert v. Tigert, supra* note 6 at 821, citing *Meyers v. Central Nat. Bank of Okmulgee,* 183

Okl. 231, 80 P.2d 584 [1938] (syllabus 2); *Johnson v. Johnson, supra* note 12 at 544; and *Carpenter v. Carpenter, supra* note 12 at 652.

15. See *supra* note 11 at 873.

16. See *supra* note 12 at 255.

17. See *supra* note 2.

18. See italicized language in *supra* note 1 pertaining to the disposition of the homestead.

mining her liability. Even though the Court of Appeals could not, on this record, make an assessment as to the wife's legal obligation, if any, on the promissory notes, it erred by leaving the husband solely responsible for discharging the entire homestead-related spousal debt. To that extent its opinion is clearly contrary to the weight of the evidence.

The wife was entitled to an equitable share of the unencumbered homestead valued between $90,000 and $95,000. She will in the collateral case litigate with the husband's parents the there-disputed issue of whether the transaction in that suit was a loan or a gift. If liability for the homestead-related indebtedness were to be imposed on her, both spouses should bear the burden equally. The appellate court's *equal distribution of the homestead asset* also called for an *equal allocation of the wife's potential* homestead-related *indebtedness.* This much appears to be plainly in keeping with the simplest notions of fundamental fairness to both of these forensic combatants.

▉ The Court of Appeals' opinion is modified *only* insofar as it is in conflict with the disposition we make today; we leave undisturbed all those portions of that opinion which were not tendered for review by the husband's certiorari petition; we affirm the trial court's award of the homestead to the husband but direct that on

remand the wife be awarded a money judgment of $45,000 with a lien impressed against the property for payment of this amount; we modify the decretal provision that allocates to the husband the sole responsibility for discharging the default judgment to his parents;[19] *if, and only if, in the collateral lawsuit* any obligation to the parents on the notes there in contest be adjudicated against the wife, it is to be borne equally by the parties.[20] Lastly, we remand the cause for further proceedings not inconsistent with this pronouncement[21] and direct that each party bear its own appeal- and certiorari-related counsel-fee expenses.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, SIMMS and SUMMERS, JJ., concur.

KAUGER, J., concurs in part and dissents in part.

HODGES and ALMA WILSON, JJ., dissent.

ALMA WILSON, Justice, dissenting:

The sole issue here concerns a division of property in a divorce action. I disagree with the majority's characterization of a wholly separate civil action as being appropriate or pertinent to the disposition of this divorce action.

The fact is the homestead property in controversy was legally unencumbered at the time of the divorce. It was not subject

---

**19.** We cannot grant a new trial because neither the wife nor the husband sought this relief. *Woolfolk v. Semrod,* Okl., 351 P.2d 742, 745 [1960]; *May v. May,* Okl., 596 P.2d 536, 540 [1982]; and *Johnson v. Wade, supra* note 4 at 257–258. The husband, who did not appeal, is not entitled to any corrective relief from the decree. We are not unmindful of this principle. See *Woolfolk v. Semrod, supra.* What we grant him on certiorari today is not independent relief from the decree but an equitable modification of the relief afforded the wife in the intermediate appellate court. This we do by burdening the wife's there-rendered money award with a contingent liability for one-half of the homestead-related spousal debt if that obligation be adjudged against her in the collateral lawsuit.

**20.** If the homestead-related debt becomes an adjudicated obligation of both spouses, each of them is entitled to judicial protection from having to bear that liability alone. After dissolu-

tion of marriage and absent some contract, the spouses' rights *inter sese* are governed by the divorce decree; if there be nothing in the decree or contract to support one spouse's claim for contribution from another towards a spousal obligation, neither can impose liability upon the other. See *Shipp v. Shipp,* Okl., 383 P.2d 30, 33 [1963]; *DeWeese v. Fisher,* Okl., 658 P.2d 1153, 1154 [1983]; *Johnson v. Johnson,* Okl., 674 P.2d 539, 543 [1983]; and *Chapman v. Chapman,* Okl., 692 P.2d 1369, 1374 [1984].

**21.** In an equity case this court will order the trial court to render that decree which the chancellor should have rendered on the record presented. *Schock v. Fish,* 45 Okl. 12, 144 P. 584, 587 [1914]; *Sango v. Sango,* 105 Okl. 166, 232 P. 49, 51–52 [1924]; *Champion v. Champion,* 203 Okl. 105, 218 P.2d 354, 356 [1950]; *Marshall v. Marshall,* Okl., 364 P.2d 891, 895 [1961]; and *Johnson v. Johnson,* Okl., 674 P.2d 539, 546 [1983].

to any mortgage liability or other security interest and neither party asserted the homestead as his/her separate property. Thus, the trial court did not abuse its discretion in treating the homestead as marital property subject to equitable division. Moreover, no evidence was presented— whether in the nature of promissory notes, or otherwise—to establish a separate spousal money debt which might be subject to division. Yet, the majority deems alleged responsibility on the untendered notes "spousal debt", and dictates distribution of "spousal debt" in a separate civil action.

Whether or not the monies in question may be properly characterized as a gift to the marital estate or spousal debt should be litigated within the confines of the division of property phase of the divorce action —not in a separate civil action. Our statutes provide for the joinder of issues which generate from the same occurrence or transaction and/or consolidation when actions involve a common question of law or fact. *See,* 12 O.S.1987 Supp., § 2018. It is the trial judge in the divorce action who has before him the facts and circumstances surrounding the entire spousal relationship, and it is he who is in the better position to adjust the equities with reference to marital assets and liabilities. Therefore, joinder of the issues in instances of this nature provides a more thorough assessment of the equities and is conducive to orderly expedition of the matter and judicial economy.

I would remand this case to the trial court for joinder and to hear the evidence, and based thereon, to determine whether the monies in question represent a gift to the marital estate or constitute a liability upon said marital estate. In either event the divorce judge should be directed to make a final equitable distribution of marital property.

I have been authorized to state that HODGES, J. joins in this dissent.