Sharon Kay CHAPMAN, Appellee,

v.

Jerry Lee CHAPMAN, Appellant.

No. 51853.

Court of Appeals of Oklahoma, Division No. 2.

May 27, 1980.

Released for Publication by Order of Court of Appeals June 26, 1980.

John R. Cain, Michael F. Muldowney, Oklahoma City, for appellee.

Hal S. Whitten, Jr., Whitten & Pankey, Oklahoma City, for appellant.

BRIGHTMIRE, Presiding Judge.

When she filed this action Sharon Chapman asked for dissolution of her fifth marriage. It had lasted four years and bore no children. The trial court granted both par-

ties a divorce, awarded the woman certain personal property, $420 alimony, a $7,000 property division judgment against the man and awarded the man the rest of the property including the home. The man appeals saying that the $7,000 judgment is unfair, inequitable and at war with the law.

I

To the marriage in 1973 the woman brought at least one child of a previous marriage, an earning capacity of $700 a month, property consisting of an equity in a 1971 Buick LeSabre convertible, an "R.C.A. portable television set, . . . personal clothing, dishes, small kitchen appliances, golf clubs, and a golf ball, and this kind of stuff . . . [a] Bowling ball . . ." and debts of $1,700 to $2,200 most of which were the outstanding balance on her car.

The record does not disclose exactly what assets the man possessed at the outset of the marriage, but it does show he owned a substantial one—a Winnebago motor home dealership—worth $275,000 in which the man had an equity of between $30,000 and $40,000.

Some four months after the couple married,[1] the woman quit her $700 a month job with Appliance Buyers Credit Corporation and the man sold the Winnebago dealership for $275,000 and netted about $30,000 after taxes.

It was with this money that the parties paid off the woman's debts, bought a $35,-000 house, established an unprofitable used car business, acquired an interest in an Apollo motor home dealership, and paid for living expenses until the funds were used up shortly before the woman filed for this action.

There is evidence that the woman worked some in the used car business, the Apollo dealership, and in the home—a contribution more than offset by mutual efforts of the

---

1. It should be noted that at one point in her testimony, the woman testified she left her pre-marriage employment in January of 1975. This appears to be a typographical error, however, because in later testimony the woman unequivocally stated that she quit her job four months after marrying the man. Corroborating this is the woman's further testimony that one reason she quit her job was to help with a pre-sale inventory of the Winnebago dealership—a sale that was consummated in early 1974.

man. There is no evidence that what she did increased the value of any of the three objects of her efforts.

## II

The question is, then, whether the court was justified under the evidence in awarding the woman $7,000 as her share of the property jointly acquired by the parties. The basis for the award is not clear but apparently the court treated all the property purchased during the marriage as jointly acquired assets subject to division. At the time he announced his judgment the trial judge noted that the parties owned the house, some furniture, a bass boat, two cars (Buick and Audi), and an interest in Apollo Sales, Inc., but he did not disclose his adjudicatory objective nor explain the basis for the $7,000 judgment.

As far as we can determine from the record the judgment is clearly against the weight of the evidence. Equity in the house was said to be about $13,000, the household items were worth around $3,300 and the stock in Apollo had a book value of $4,200. The Buick was given to the woman along with the R.C.A. TV, her clothing, personal effects, dishes, golf clubs and all of the household furniture, fixtures and appliances except a "Masonic Lodge Book, and his [the man's] old college books, a mug, a brass tree, a red lamp, and the fireplace tools." The latter items were given to the man in addition to the house, the Audi car, the pick-up (owned by Apollo Sales, Inc.), the bass boat, and the Apollo Sales, Inc., stock.

Using *Longmire v. Longmire*, Okl., 376 P.2d 273 (1962), as a predicate, the man argues the parties really did not acquire anything through their joint efforts during the marriage but used assets he possessed at the inception of the relationship to live on, pay off the woman's prenuptial debts, and purchase all of the assets on hand at the time of the divorce. Indeed for a while

the parties lived very well and traveled a lot. In fact, the way the man saw it, the beginning of the connubial disintegration was contemporaneous with the onset of a seriously dwindling money supply in January 1977. "In other words," concluded the man, "when the money from the sale of the Winnebago dealership ran out, and [I] started to have to work really hard to make a living in Apollo Sales that is when the marriage started coming apart . . . [a]nd ended up with [my] wife filing for divorce." In a real sense, then, one could conclude the man invested his life's savings in what he hoped would be a long term relationship—an investment that vanished when the woman filed for a divorce. It seems to us the man is sufficiently penalized by having to forego any return on his investment—and even restoration of the investment itself.[2] To exacerbate this inequity by imposing a substantial judgment on him is oppressive.

Award of the Buick, paid for largely out of the man's separate funds, and other household equipment—also paid for out of his separate funds—to the woman adequately compensated her for whatever interest she may have acquired in any of the property by virtue of her efforts. The increase in value of the home—the principal asset—was due to inflation rather than any significant contribution of the woman and thus the asset retained its separate property character. *May v. May*, Okl., 596 P.2d 536, 539 (1979).

Under these circumstances we can find no legal, equitable or fair basis for the $7,000 division of property judgment, hence the rationale of *Longmire* requires it be vacated. Save for this modification the trial court's judgment is affirmed.

Reversed in part and affirmed in part.

BACON, J., concurs.

2. *See Hubbard v. Hubbard*, Okl., 603 P.2d 747, 750–52 (1979), introducing the investment theory.

NEPTUNE, Judge, dissenting.

I dissent. The trial court necessarily found that there was sufficient jointly acquired property to sustain an award of the $7,000 amount payable over a period of years. The present day value of the award is only about $5,000 because it was ordered to be paid in monthly installments of $116.67. The record amply sustains the award.

It is conceded that the real property equity is $13,000 and it was acquired subsequent to the marriage date. From the husband's separate property $3,500 was paid down. The $9,500 additional equity was acquired during the marriage. During part of that period the wife was working earning $700 a month. Her earnings from her work could be as much as $10,500—$700 a month for 15 months from November 1973 to January 1975 when she quit. Though her earnings and separate property were not traced to a measured contribution to the home acquisition, there was evidence that through deductions from her pay she contributed to reduction of the note payable for the household appliances and major furniture items. In a deposition referred to by the trial court as being before it, though not introduced, the net amount of money received by appellant from the Winnebago sale was between $5,000 and not more than $20,000.

Nullification of the trial court's order dividing the property eliminates the alternative opportunity for the trial court to have provided support alimony in the absence of a property award payable monthly. The volume of property available to a spouse substantially influences the volume of or need for support alimony. The trial court is in a better position than the appellate court to make these determinations.

In the instant case, the parties each had daughters by previous marriages, so the household consisted of the husband and wife and the two children. The record discloses no complaint about the domestic performance of the wife until just before the wife filed for divorce and after the breakdown of the marriage. The orders made by the trial court, I think, are not clearly against the weight of the evidence nor contrary to law and are not an abuse of discretion. A wife's entitlement to an equitable division of property does not derive from any participation by her in the business world as distinguished from domestic activities. *Durfee v. Durfee*, Okl., 465 P.2d 161, 165 (1969). I would affirm.