Elizabeth Ferguson MEASON,
Appellant Cross Appellee,

v.

Thomas Mansfield MEASON, Appellee
Cross Appellant.

No. 62323.

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 22, 1985.

Rehearing Denied Dec. 10, 1985.

Certiorari Denied April 25, 1986.

John D. Boydston, Tulsa, Okl., for appellant cross appellee.

Don E. Williams, David A. Tracy, Fred H. DeMier, Tulsa, Okl., for appellee cross appellant.

REYNOLDS, Judge.

Divorce Action. Elizabeth Meason (wife) and Thomas Meason (husband) were married in September, 1949. They raised four children, all are of legal age. This family enjoyed a fairly high standard of living in Tulsa, Oklahoma. The majority of this couple's income and property came from; 1) husband's salary as a self employed geologist; 2) wife's salary as a school teacher from 1970–1980; 3) inheritance and lifetime gifts from wife's parents and; 4) income from a rent house. Wife filed for divorce in December, 1982. Husband also requested a divorce. Each was granted a divorce February, 1984. Both appeal property division rulings.

During this marriage husband established an oil and gas consulting business. This business' profits increased significantly after a capital infusion of a $40,000 loan from wife's separate inherited funds. After that loan and a successful investment, the business income increased from $23,500 for 1978 to $340,498 for 1980 and $457,513 for 1983. The property is working interest and royalty interests. Wife's expert witness testified at trial that the net revenues over the life of the wells will be $1,773,452. This figure was based on escalating the price of oil and gas by 6% annually with a maximum price on oil at $60 per barrel and on gas at $5 per cubic feet. The expert explained that between these two owners, $1,773,452 is the value of the business. The expert continued to say that if a third party were purchasing this business two discounts would be applied. A 12% discount would be applied for a present value of these revenues. A second discount would be applied for a risk factor. He explained that he would apply a 25% discount on proved producing wells, a 50% discount on proved nonproducing wells (tested but shut in) and a 75% discount on proved undeveloped wells (undrilled but with offset production). The expert witness said these two discounts should not be applied to owners who desired to know the value of their business. Instead, the discounts would be applied to a third party purchaser taking a risk on purchasing the

asset and for the present value of his purchase dollars.

■ After reviewing this evidence the trial court ruled that the oil properties held by Tom Meason d/b/a Oil Ventures were jointly acquired property. The trial court held that it was impractical and inequitable to divide the property in kind. The court awarded husband the properties and tried to offset this with other joint properties awarded wife. The trial court adopted wife's expert's evaluation of the properties and applied the two discounts as if the properties were being sold to a third party. The trial court also applied a tax impact of $281,129 which was deducted from the net revenues. When all the deducting was completed the court valued this $1,773,452 business at $332,949. Considering the business profits more than this per year, we find this to be an abuse of discretion. We see no reason for the court to apply these discounts; this is jointly acquired property to be divided. Further it was error to apply a tax impact to the valuation. Our Supreme Court said in *Carpenter v. Carpenter*, 657 P.2d 646 (Okl.1983) with respect to awarding alimony, tax impact is clearly relevant; but, tax impact does not affect the value of jointly acquired assets. We see no reason why these properties should not be divided in kind between the parties. This would clearly be an equitable way to divide the property and each would bear their own tax. Because this ruling was against the weight of the evidence and inequitable, the judgment will be set aside. *Reagan v. Reagan*, 460 P.2d 956 (Okl.1969). The judgment is therefore remanded to the trial court to make an equitable division of the business. We do not see any potential for either party having dominion or control over the other simply because they both own interests in the same properties. A like division was made in *Roberson v. Roberson*, 439 P.2d 938 (Okl.1968).

We find the trial court has abused its discretion. The case is reversed and remanded for a new trial not inconsistent with this opinion.

■ The $40,000 loan from wife to husband is still outstanding. The interest on this note at the date of the ruling was $26,133. The court held that this loan was from wife's separate inherited funds. The court also ruled that this debt was a jointly acquired debt since the business was jointly acquired. The court ordered husband to pay it. We agree that this was a loan from wife's separate inherited funds to their business. Now that we have instructed that the business be divided, we feel that equity requires us to split the debt. Each must pay half of the principal and half the interest back to wife's separate funds. It would be inequitable to give wife half of the interest in the property and absolve her of any obligations of the debts created to develop the properties. *Allen v. Allen*, 601 P.2d 760, (Okl.Ct. of App.1979). The same will apply to the other outstanding loan from the First National Bank and Trust of Tulsa. We also hold that husband and wife should both share the outstanding tax liability for 1983. These three debts would have been paid with revenues from their business and should now still come from the owners.

Wife inherited a substantial estate from her parents: cash, stocks, realty, oil and gas royalties, household furnishings including furniture and jewelry. The cash, the income from royalties, and those assets she liquidated were deposited in savings accounts. The evidence also showed that wife opened a special savings account in the mid 1970's for her husband and children in case of her death. This account was in both names. This account was eventually closed and $25,049 was returned to wife's separate savings account. Further the evidence showed that on certain occasions she deposited other joint funds into these savings accounts. Her testimony was that she would sometimes pay for joint expenses out of her inheritance money and then repay her inheritance funds later with her pay check, a rent check or some other joint source.

The trial court held most of wife's savings accounts to be her separate property not subject to division. The $25,049 which

was once in a joint account, was held to be joint and awarded it to wife as part of her share of the spousal property.

Wife also had a checking account. This account was funded by her pay check and money transferred to her by husband for household expenses. The court held the parties checking accounts to be joint. The evidence showed that when planning to buy furniture with her inherited funds, wife would take close to the exact amount of the purchase out of her separate savings account and deposit it into her checking account.

Most of the household goods were held to be wife's separate property even though she had written checks for the furniture out of her checking account. Other furniture was held to be joint and most of it was awarded to wife.

On appeal, husband first contends that the income from wife's inherited royalty interests should be deemed joint because his skill increased those incomes. Under *Templeton v. Templeton,* 656 P.2d 250 (Okl.1982) he must show that "the net worth of the property increased during the marriage as the direct result of substantial contribution by [his] efforts, skill or funds." There is no evidence that the royalty income increased as a direct result of any substantial contribution.

Next, husband argues that the incomes from wife's royalties were so confused, blended and commingled with joint funds that they lost their separate identity. He also claims that furniture bought from the checking account has lost its character as separate property. The evidence shows there is great confusion distinguishing separate property from commingled property. Inherited property used for the benefit of the family can lose its character as separate property. *Agent v. Agent,* 604 P.2d 862 (Okl.Ct. of App.1979). The trial court is instructed to determine which bank accounts and which pieces of furniture have lost their character as separate property consistent with that case.

This court further orders each party to pay their own attorney's fees and cost.

After a review of the entire record and briefs of the parties, we hold the trial court did commit errors as alleged by both Appellant and Appellee.

REVERSED AND REMANDED.

ROBINSON, P.J., concurs.