2006 OK 99

STATE of Oklahoma, ex rel., The OKLA-HOMA STATE DEPARTMENT OF HEALTH, Petitioner,

v.

The Honorable Vicki L. ROBERTSON, Judge of the District Court of Oklahoma County, Seventh Judicial District, Respondent,

Patrick G. Walters, CPA, Real Party in Interest.

No. 102,241.

Supreme Court of Oklahoma.

Dec. 19, 2006.

Carl Hughes, Hughes & Goodwin, Oklahoma City, OK, for real party in interest, Patrick G. Walters, CPA.

N. Kay Bridger–Riley, P. Craig Bailey, Bridger–Riley & Associates, P.C., Tulsa, OK, for real party in interest, Patrick G. Walters, CPA.

Gary W. Gardenhire, General Counsel, Nick E. Slaymaker, Deputy General Counsel, Charles L. Broadway, Assistant General Counsel, Office of the General Counsel, Oklahoma State Department of Health, Oklahoma City, OK, for petitioner, State of Oklahoma, ex rel., the Oklahoma State Department of Health.

WINCHESTER, V.C.J.

¶1 Two issues are raised in this appeal: (1) Is the Nursing Home Care Act ("NHCA"), 63 O.S.2001, 1–1901 *et seq.*, applicable to Patrick G. Walters ("Walters"), the real party in interest herein; and (2) Should Walters have exhausted administrative remedies before proceeding in district court. We answer both questions in the negative.

### I. FACTS AND PROCEDURE

¶2 In 2000, the Department of Health (the "Department") investigated a nursing home management company, Medical Management Group, Inc. ("MMGI"), regarding allegations the owner of the company, E.W. Jiles ("Jiles"), had bribed former Deputy Commissioner of Health, Brent VanMeter ("VanMeter"). The Department learned of a conspiracy between VanMeter and Jiles wherein VanMeter appointed Jiles' company, MMGI, and Christopher Wakely as "temporary managers" of certain nursing homes. Through a federal investigation the Department learned that Jiles, despite alleged attempts to conceal

his identity as owner of MMGI, misdirected funds derived from the operation of those nursing homes for his own personal use. Subsequently, the Department ordered the termination of MMGI and Wakely as temporary managers and requested them to provide a full accounting of the funds derived from the operation of the subject homes. The attorney for the parties under investigation hired Walters, a certified public accountant, to perform the requested accounting. Walters provided the accounting to the Department in June 2000.

¶ 3 On March 3, 2005, nearly five years after Walters provided the accounting, the Department commenced an administrative proceeding against Walters, seeking a civil penalty in excess of $5,000,000.00, for alleged violations of 63 O.S.2001, 1–1916, one of the provisions of the NHCA.[1] Specifically, the Department alleges that Walters violated various provisions of 1–1916(A) by "intentionally filing false, incomplete or misleading information to the Department with the specific intent to interfere with, or impede the work of the Department in determining the extent and scope of Jiles' improper involvement with the subject homes." The Department believes Walters rendered his accounting of the homes with the intent to conceal Jiles' affiliation with MMGI.

¶ 4 On March 16, 2005, Walters filed a petition in district court seeking a writ to prohibit the Department from proceeding with its pending administrative action. Walters argued the Department was without au-

thority to proceed against him as the NHCA did not apply to him and that, even if it did, the Department could not enforce administrative penalties against him under 1–1916(A), a criminal statute which provides for violations to be prosecuted by the district attorney or Attorney General. The Department moved to dismiss the petition, countering that it could seek penalties against *anyone* found to have violated the provisions of the NHCA. It is undisputed that Walters is not a licensee, owner, or operator of a nursing home facility as defined by 63 O.S.Supp. 2006, 1–1902. The district court found the NHCA inapplicable to Walters and issued the writ of prohibition.

## II. APPLICATION OF THE NHCA TO WALTERS

 ¶ 5 In this matter of first impression, we must determine whether the Department's regulatory authority provided by the NHCA extends to the entire population, as urged by the Department, or is, instead, limited to licensees, owners and facilities. The interpretation to be given to a statute is a question of law, subject to our plenary, independent and non-deferential examination. *State ex rel. Dept. of Transportation v. Little,* 2004 OK 74, ¶ 10, 100 P.3d 707, 711. We review this case under the *de novo* standard of review. *Id.*

 ¶ 6 Legislative intent governs statutory interpretation and this intent is generally ascertained from a statute's plain

---

1. 63 O.S.2001, § 1–1916 provides as follows:

 A. No person shall:
 1. Intentionally fail to correct or interfere with the correction of a violation within the time specified on the notice or approved plan of correction under this act as the maximum period given for correction, unless an extension is granted and the corrections are made before expiration of extension;
 2. Intentionally prevent, interfere with, or attempt to impede in any way the work of any duly authorized representative of the Department in the investigation and enforcement of this act;
 3. Intentionally prevent or attempt to prevent any such representative from examining any relevant books or records in the conduct of official duties under this act;
 4. Intentionally prevent or interfere with any such representative in the preserving of evi-

 dence of any violation of this act or the rules promulgated under this act;
 5. Intentionally retaliate or discriminate against any resident or employee for contacting or providing information to any state official, or for initiating, participating in, or testifying in an action for any remedy authorized under this act;
 6. Willfully file any false, incomplete or intentionally misleading information required to be filed under this act, or willfully fail or refuse to file any information; or
 7. Open or operate a facility without a license.
 B. A violation of this section is a misdemeanor.
 C. The district attorney of the county in which the facility is located, or the Attorney General, may be requested by the Department to initiate prosecutions under this section.

language. *The Pentagon Academy, Inc. v. Independent Sch. Dist. No. 1 of Tulsa County,* 2003 OK 98, ¶ 19, 82 P.3d 587, 591. However, where a strict, literal interpretation of the statute would lead to inconsistent or incongruent results between the enactment's different parts, judicial interpretation becomes necessary to reconcile the discord. *McNeill v. City of Tulsa,* 1998 OK 2, ¶ 11, 953 P.2d 329, 332.

■■■ ¶ 7 In the interpretation of statutes, we do not limit our consideration to a single word or phrase. Instead, we construe together the various provisions of relevant enactments, in light of their underlying general purpose and objective, to ascertain legislative intent. *World Publishing Co. v. Miller,* 2001 OK 49, ¶ 7, 32 P.3d 829, 832; *McNeill, supra,* 1998 OK 2 at ¶ 11, 953 P.2d at 332. "Words and phrases of a statute are to be understood and used not in an abstract sense, but with due regard for context and they must harmonize with other sections of the act to determine the purpose and intent of the legislature." *McNeill, supra* at ¶ 11, citing *Groendyke Transport Inc. v. Gardner,* 1960 OK 153, 353 P.2d 695.

¶ 8 The purpose of the NHCA is to provide a "comprehensive system of licensure and certification for facilities" in order to, primarily, protect "the health, welfare and safety" of its residents. 63 O.S.Supp.2006, § 1–1904(A)(1). The NHCA is replete with provisions concerning regulations for, and redress of violations by, licensees, applicants for licenses, owners and facilities. *See, e.g.,* 63 O.S.2001, §§ 1–1906(F)(1), 1–1912, 1–1914.1 and 1–1916.1(C). The Act, however, is silent regarding actions by those other than the aforementioned.

¶ 9 In its administrative petition, the Department contended Walters provided false and misleading information to the Department and was part of the conspiracy to conceal Jiles' involvement in the VanMeter bribe, all violations of 63 O.S.2001, § 1–1916(A).[2] The Department contends the trial judge erred in issuing her writ of prohibition and injunction because it has the authority, pursuant to 63 O.S.2001, § 1–1916.1, to impose a civil penalty upon any person who has violated any provision of the NHCA.

¶ 10 In response, Walters argues the Department had no authority under the NHCA to impose an administrative civil monetary penalty against him as an accountant, and independent contractor, for a nursing home management company. Walters further responds that even if he could be liable for a violation of § 1–1916, only a district attorney or the Attorney General can prosecute such a violation.[3]

¶ 11 The Department's statutory construction argument relies strictly on the use of the term "any" in 1–1916.1 which provides that any person who has been determined by the Department to have violated any provision of the NHCA may be liable for an administrative penalty for each day the violation continues.[4] The Department maintains that this language allows it to broadly enforce the NHCA's regulations upon anyone. This construction ignores the language in, among others, § 1–1903 which exempts certain facilities from the scope of the NHCA, such as those facilities operated by the Oklahoma Department of Veterans Affairs and those facilities not being compensated for their services rendered. Thus, by its very terms, the NHCA does not apply to everyone.

¶ 12 Indeed, a review of several other provisions of the NHCA reveals that the Legislature intended the NHCA to apply only to licensees (and applicants for licenses), owners and specifically-defined facilities. *See, e.g.,*

---

2. Thus, the only NHCA section the Department claims Walters has violated is § 1–1916, which, on its face, provides a criminal penalty for its violation.

3. Because we find the NHCA inapplicable to Walters, we need not address whether the Department has the authority to administratively enforce penalties against Walters through the criminal provisions of § 1–1916.

4. The Departments seeks an administrative penalty against Walters in excess of $5,000,000.00. The penalty, which may be up to $3,000.00 per day, was apparently derived by multiplying $3,000.00 per day by the number of days that had passed since Walters first provided his accounting to the Department (nearly five years). Walters' first notice of alleged violation of the NHCA came with the Department's filing of the administrative petition.

63 O.S.2001, §§ 1–1906(F)(1), 1–1912, 1–1914.1 and 1–1916.1. Section 1–1906(F)(1) provides that the "Department, after notice to the applicant or licensee, may suspend, revoke, refuse to renew a license or assess administrative penalties" for violation of the NHCA. The Department must promptly serve such notice upon a licensee and give time for the licensee to file a "plan of correction." 63 O.S.2001, § 1–1912. Section 1–1914.1 provides that for violations of the NHCA, the Department "shall seek remedial action against a licensee, owner or operator of a facility and may, after notice and opportunity for a hearing, impose" remedies intended to gain compliance and provide for the health, safety and welfare of the facility's residents. A facility can appeal any sanction imposed, and a licensee can avoid a penalty entirely by simply surrendering his/her license. 63 O.S.2001, § 1–1916.1.[5] There is no similar option for non-licensees, such as Walters. We believe this is because the Legislature never intended such penalties under the NHCA to apply to non-licensed individuals. Certainly, the Legislature could not have intended to expose third parties to greater liability than the heavily-regulated licensees, owners and facilities.

¶ 13 We have previously recognized that the NHCA "is not a model of clarity and precision". *Morgan v. Galilean Health Enter., Inc.,* 1998 OK 130, ¶ 8, 977 P.2d 357, 361; *Fanning v. Brown,* 2004 OK 7, ¶ 9, 85 P.3d 841, 845. In *Fanning,* a private litigant sought to enforce the provisions of the NHCA against individual shareholders of a nursing home facility's operating company. At issue in the case was the construction of the term "owner" as used in the NHCA and whether the individual shareholders could be identified as such. 63 O.S.Supp.2001, § 1–1902(16).[6] In finding the Legislature did not intend the NHCA to extend to the individual shareholders, this Court held:

> In our view, the "profit or lose" language in the second sentence does not extend liability beyond the specific person or entity which has responsibility for providing the relevant services. *We believe the Legislature intended the language to be construed narrowly so that it would not extend liability to other persons and entities which have some sort of legal interest in the facility but are not the "owner".* (Emphasis added).

*Fanning,* 2004 OK at ¶ 13, 85 P.3d at 846. The Court, mindful not to "allow the joinder of defendants clearly never intended by the Legislature" under the NHCA, affirmed the trial court's ruling dismissing the NHCA claim against the shareholders. *Id.* at ¶ 14.

¶ 14 As we read the sections of the NHCA, it is clear the Legislature intended the application of the NHCA to cover licensees, owners and facilities, and not unsuspecting third parties, such as Walters. The Department is without statutory authority to sanction persons other than those specifically targeted by the NHCA and defined thereunder. As such, the trial court was correct in issuing the writ of prohibition enjoining the Department from further proceeding against Walters.

---

5. 63 O.S.2001, § 1–1916.1(C) provides, in pertinent part:

 B. The amount of the penalty shall be assessed by the Department pursuant to the provisions of subsection A of the section, after notice and opportunity for hearing. Within ten (10) working days of the inspection documenting the violation, the facility may appeal this decision pursuant to Article II of the Administrative Procedures Act. In determining the amount of the penalty, the Department shall include, but not be limited to, consideration of the nature, circumstances and gravity of the violation, the repetitive nature of the violation at this facility or others operated by the same entity, the previous degree of difficulty in obtaining compliance with the rules, and, with respect to the person found to have committed the violation, the degree of culpability, the facility's financial condition and substantial show of good faith in attempting to achieve compliance with the provisions of the Nursing Home Care Act.

 C. Any license holder may elect to surrender his license in lieu of said fine but shall be forever barred from obtaining a reissuance of the license or any other license issued pursuant to the Nursing Home Care Act.

6. This statute was amended, 2004 Okla.Sess. Laws, Ch. 436, § 10, but subsection 16 remained unchanged and is codified at 63 O.S.Supp.2006, § 1–1902(16). Section 16 defines an owner as "a person, corporation, partnership, association, or other entity which owns a facility or leases a facility. The person or entity that stands to profit or lose as a result of the financial success or failure of the operation shall be presumed to be the owner of the facility."

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

¶ 15 The Department asserts Walters has failed to exhaust his administrative remedies and that the trial court erred in denying its motion to dismiss. Generally, a party is required to pursue administrative remedies, when relief is available, before resorting to the courts. *Waste Connections, Inc. v. Oklahoma Department of Environmental Quality*, 2002 OK 94, ¶ 7, 61 P.3d 219, 223. Walters is not challenging the Department's authority to issue administrative penalties to licensees, owners and facilities under the NHCA; rather, Walters challenges the applicability of the NHCA, and the Department's power to act thereunder, to him.

¶ 16 A recognized exception to the exhaustion doctrine is "where a challenge is made to the power of the agency to act at all under the statutory scheme it is charged with administering." *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n*, 1988 OK 117, ¶ 12, 764 P.2d 172, 181. Moreover, "an agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority." *Marley v. Cannon*, 1980 OK 147, ¶ 10, 618 P.2d 401, 405.

¶ 17 The Department, as the chosen enforcer of the provisions of the NHCA, alleges it can bring an administrative action against "any" person it believes to have violated the provisions of the NHCA. 63 O.S. 2001, 1–1916.1. As stated above, and as found by the trial court, the Act applies to licensees, owners and facilities, not to the entire population and certainly not to unaffiliated third parties. Because Walters is not subject to the Act, he was not required to exhaust administrative remedies with the Department prior to resorting to the courts. We find no error in the trial court's decision.

AFFIRMED.

ALL JUSTICES CONCUR.