Dear Senator Coates:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. When performing a construction project on a force account basis pursuant to 61 O.S. 2001, § 103.4[61-103.4], what portion of the work may be done by school employees, and what portion may be contracted out to non-employees of the school district?
 2. Is it permissible for a school district, using in-house personnel, to act as its own Construction Manager by bidding out various bid packages and coordinating the efforts of multiple contractors in order to complete a construction project?
Your questions involve the procedures outlined for a school district seeking to perform public construction and the relationship of statutory language in Oklahoma Statutes on construction managers, contracting and force accounts. As a starting point in our discussion of school construction law, the Public Competitive Bidding Act of 1974 ("Act"), 61 O.S. 2001 Supp. 2009, §§ 101 — 138, sets forth mandatory procedures and requirements for awarding public construction contracts. The Act provides at 61 O.S. 2001, § 103.4[61-103.4] that "[n]othing in the Public Competitive Bidding Act of 1974 shall be construed to prohibit a school district from erecting a building or making improvements on a forceaccount basis." Id. (emphasis added).
 I. PUBLIC COMPETITIVE BIDDING ACT OF 1974 AND FORCE ACCOUNTS
Restating your first question, you ask if a school district is authorized to complete a portion of the work on a force account basis and contract out other portions of the same construction project. The awarding of contracts for public construction by public entities such as school districts is generally governed by the Act. School districts are subject to the Act because Section 102(5) defines "public agency" to include any school district or other political subdivision of the State. *Page 2 
Section 102(6) defines "public construction contract" to be any "contract, exceeding Fifty Thousand Dollars ($50,000.00) in amount, awarded by any public agency for the purpose of making any public improvements or constructing any public building or making repairs to or performing maintenance on the same," with certain exceptions not relevant to your inquiry. School districts must also follow the procedures outlined in 61 O.S.Supp. 2009, § 103[61-103](A), in awarding public construction contracts and "[u]nless otherwise provided by law, all public construction contracts exceeding Fifty Thousand Dollars ($50,000.00) shall be let and awarded to the lowest responsible bidder, by open competitive bidding after solicitation for sealed bids, in accordance with the provisions of the Public Competitive Bidding Act of 1974." Id. (emphasis added). "Except as provided in subsection D of this section, public construction contracts less than Fifty Thousand Dollars ($50,000.00) shall be let and awarded to the lowest responsible bidder by receipt of written bids." Id. § 103(B).
That statute, with specific applicability to school districts states:
 The provisions of this subsection shall apply to public construction for minor maintenance or minor repair work to public school district property. Such public construction contracts for less than Twenty-five Thousand Dollars ($25,000.00) may be negotiated with a qualified contractor. Such public construction contracts equal to or greater than Twenty-five Thousand Dollars ($25,000.00) but less than Fifty Thousand Dollars ($50,000.00) shall be let and awarded to the lowest responsible bidder by receipt of written bids. No work shall be commenced on any such public construction contract until a written contract is executed and proof of insurance has been provided by the contractor to the awarding public agency.
Id. § 103(D). Thus, the dollar amount of the proposed contract determines the mandatory process to be followed by the school district in awarding the public construction contract.
The Oklahoma Supreme Court considered the Act in Carpet City, Inc. v.Stillwater Municipal Hospital Authority, 536 P.2d 335, 339 (Okla. 1975.) Under the teachings of the court the Act must be followed when it is applicable. See id. The question you ask is when the Act is applicable. For school districts, the Act is applicable to public construction contracts exceeding fifty thousand dollars and for lesser contracts, minor maintenance and repair work on school district property, as outlined herein.
Additionally, as noted above, the Oklahoma Legislature has expressly authorized the use of a force account by a school district as an exception within the Act. See 61 O.S. 2001, § 103.4[61-103.4]. As the Oklahoma Supreme Court held in Riffe Petroleum Co. v. Great NationalCorp., 614 P.2d 576, 579 (Okla. 1980), "[i]n the absence of a contrary definition of the common words used in an act, we assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance." Id. The ordinary meaning of words is found in dictionaries of common usage. Webster'sThird Edition New International Dictionary defines the term "forced account" to mean: "the part of the expense account of a public body . . . resulting from employment *Page 3 
of a labor force . . . usu[ally] distinguished from the part resulting from contracting similar services with commercial agencies. . . ."Id.
at 887
Based on this meaning of the term "forced account," we conclude that the use of a forced account contemplates that part of the expense resulting from the use of a school district's own employees as a labor force, as opposed to contracting out the work to be performed by a third party. This is consistent with our brief discussion of the term "forced account" in Attorney General Opinion 80-108, where, in relying onPincelli v. Ohio Bridge Corp., 189 N.E.2d 483 (Ohio Ct. Com Pl.1964), we stated:
 The term "force account" means the erecting of a building or the making of an improvement on district property by the use of the district's own employees, purchasing its own materials and leasing the necessary equipment all under the supervision of the district.
Id. at 190 (emphasis added). The question you pose is whether a school district may choose to perform part of the construction of a building on a forced account basis using its own employees and contract out the remainder of the building project to third parties. We conclude that a school may do so. Indeed, to construe the statute otherwise would lead to an absurd result and violate the rule of statutory construction that requires us to presume that the Legislature never intends an absurd result (see Grand River Dam Authority v. State, 645 P.2d 1011, 1019
(Okla. 1982)), and would defy common sense, which under the rules of statutory construction is also not permitted. Cowart v. Piper AircraftCorp., 655 P.2d 315, 317 (Okla. 1983). For example, where a school district has employees with the skill and licenses necessary to complete all of the remodeling of a new classroom — or the construction of a building — with the exception of electrical work, the school district is permitted to use its employees on a forced account basis to remodel the classroom then contract out only the electrical work needed. To conclude otherwise would be absurd, as it would require a school district having talented, skilled and licensed employees on staff to unnecessarily spend additional monies to contract out the entire contract simply because the district did not have employees able to accomplish a single portion of the construction project.
Of course, the portion of the project that can be accomplished by the school district employees will depend on many factors. These factors include the availability of school employees to work on and supervise the project; the experience and expertise of the employees; the skills and licenses held by employees; the time limitations and deadlines for the project, in addition to the financial considerations that a school board may review in deciding to do a portion or portions of its construction project. The rest of the public construction project would become the public construction contract for which the school district must follow the other applicable construction law, including the Act. In similar manner, the purchase of materials must follow the applicable purchasing laws and policies. *Page 4 
Based upon the above, we conclude that a school district may, on a force account basis, use its employees and their skills to do as much work toward a construction project as it decides in its best business judgment to accomplish, and contract out the remainder of the project as a public construction contract under the applicable provisions of the Act.
 II. CONSTRUCTION MANAGERS AND PROJECTS
You next ask whether it is permissible for a school district, using in-house personnel, to act as its own construction manager, basically serving as a general contractor or supervisor, by bidding out various bid packages and coordinating the efforts of multiple contractors in order to complete a construction project.
A construction manager is the construction entity that has an array of qualifications to assist public entities doing construction, as the definition of "construction manager" at 61 O.S.Supp. 2009, § 61[61-61] indicates:
 3. "Construction manager" means an individual, firm, corporation, association, partnership, copartnership, or any other legal entity possessing the qualifications to provide services of construction management which include, but are not necessarily limited to, design review, scheduling, cost control, value engineering, constructability evaluation, preparation and coordination of bid packages, and construction administration[.]
Id.
The term "construction management" is defined as follows:
 4. "Construction management" means a project delivery method based on an agreement whereby the owner acquires from a construction entity a series of services that include, but are not necessarily limited to, design review, scheduling, cost control, value engineering, constructability evaluation, preparation and coordination of bid packages, and construction administration; "construction management" includes:
 a. "agency construction management" whereby the construction entity provides services to the owner without taking on financial risks for the execution of the actual construction, and
 b. "at-risk construction management" whereby the construction entity, after providing agency services during the pre-construction period, *Page 5 
takes on the financial obligation to carry out construction under a specified cost agreement;
61 O.S.Supp. 2009, § 202[61-202] (emphasis added).
A school district may not merely choose to use the construction management delivery system when doing public construction. Instead, use of the construction management system is only allowed when certain statutory criteria are met.
 The construction management project delivery method may only be used for public construction contracts when the construction project meets the criteria established by Section 202.1 of this [Title 61], except that a political subdivision or school district shall not be required to obtain permission from the Director of Central Services.
61 O.S.Supp. 2009, § 220[61-220](C).
The criteria and limitations outlined in Section 202.1 are as follows:
 C. The design-build and construction management project delivery methods shall not be used for any project unless the project meets the criteria established by the administrative rules promulgated as required by this act. Such methods shall not be used unless there is a need for compressed construction time as required to respond to a natural disaster or other emergency situation affecting public health and safety, or all of the following criteria for designation are met:
 1. The project benefits the public;
 2. There is a need for cost control; and
 3. The need exists for specialized or complex construction methods due to the unique nature of the project.
Id. Thus, while some school construction projects will qualify for using the construction management project delivery method, others will not.
Other statutes impose additional limitations upon a school district's use of this method of construction. "A political subdivision or school district shall select a construction manager based on the professional qualifications and technical experience of the construction manager."Id. § 220(B) (emphasis added). Selection criteria are included in the statute. "Only firms recognized as qualified construction managers by theConstruction and Properties Division of the Department of CentralServices pursuant to Section 62 of this title, may be considered forselection as a construction *Page 6 manager by a political subdivision or school district." Id. (emphasis added). Thus, the construction management statute for a school district requires the school district to select a construction manager from thefirms listed by the Department of Central Services. There is no authorization for a school district becoming its own construction manager.
In construing statutory enactments, "[l]egislative intent governs statutory interpretation and this intent is generally ascertained from a statute's plain language." State ex rel. State Dep't of Health v.Robertson, 152 P.3d 875, 877-78 (Okla. 2006). Additionally, "[t]he plain meaning of a statute's language is conclusive except in the rare case when literal construction would produce a result demonstrably at odds with legislative intent." Boston Ave. Mgmt., Inc. v. Assoc. Res., Inc.,152 P.3d 880, 885 (Okla. 2007) (quoting Fulsom v. Fulsom, 81 P.3d 652, 655
(Okla. 2003)). After examining the statute's plain language we conclude that a school district is not a construction entity contemplated by the statutes to serve as a construction manager, and thus a school district may not use in-house personnel to act as its own construction manager.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. When undertaking a construction project, a school district may complete as much of the work as it chooses on a force account basis. The term "force account" means "the erecting of a building or the making of an improvement on district property by the use of the district's own employees, purchasing its own materials and leasing the necessary equipment all under the supervision of the district." See 61 O.S. 2001, § 103.4[61-103.4]; A.G. Opin. 80-108, at 190. The remainder of the project may be bid as a public construction contract under the applicable provisions of the Public Competitive Bidding Act of 1974. See 61 O.S. 2001 Supp. 2009, §§ 101-138.
 2. A school district is not a construction entity contemplated by the statute to serve as a construction manager, and thus a school district may not use in-house personnel to act as the school district's construction manager. See 61 O.S.Supp. 2009, §§ 61[61-61], 202, 202.1, 220.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GLEN D. HAMMONDS ASSISTANT ATTORNEY GENERAL *Page 1