2012 OK CIV APP 26

**Robert Edward HANGER, Petitioner/Appellee,**

v.

**Susan Warner HANGER, Respondent/Appellant.**

**No. 107,949.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 4, 2011.

Rehearing Denied Dec. 22, 2011.

Certiorari Denied March 6, 2012.

---

822

Ronnie May, May Law Office, McAlester, Oklahoma, for Petitioner/Appellee.

Tracey D. Martinez, Ryan J. Reaves, Mullins, Hirsch, Edwards, Heath, White & Martinez, P.C., Oklahoma City, Oklahoma, for Respondent/Appellant.

DEBORAH B. BARNES, Presiding Judge.

¶1 Respondent/Appellant Susan Warner Hanger (Wife) appeals from portions of the trial court's Decree of Divorce and Dissolution of Marriage, filed on December 16, 2009 (Decree).[1] Wife filed a petition for divorce in Minnesota, and Petitioner/Appellee Robert Edward Hanger (Husband) filed his divorce petition in Oklahoma. Husband and Wife were married for fifteen years and have two minor children.

¶2 First the Minnesota trial court and then the Oklahoma trial court entered child support orders directed to Husband in conflicting amounts, giving rise to Wife's appeal. She asserts that, pursuant to the Uniform Interstate Family Support Act (UIFSA),[2] the trial court in Oklahoma should not have included a child support order in the Decree. Wife also asserts the trial court erred as to one aspect of its division of marital property

1. Record (R.), pp. 334–347.

2. Title 43 O.S.2001 §§ 601–100 et seq.

3. R., p. 68, ¶7.

4. R., p. 1.

5. R., p. 56.

debt. Based on our review of the record and applicable law, we affirm the Decree in part and reverse in part.

## PROCEDURAL HISTORY AND FACTS

¶3 Husband and Wife were married in 1994. Wife claimed she moved to Minnesota with their children on June 12, 2007, returned to Oklahoma for her belongings on July 4, 2007, and returned to Minnesota on July 19, 2007. Husband claimed Wife did not move to Minnesota until July 18, 2007.[3]

¶4 On January 10, 2008, Husband filed a petition for divorce in Pittsburg County, Oklahoma,[4] listing the minor children of the marriage. The docket sheet indicates summons was issued on March 19, 2008. Wife was personally served on March 24, 2008.[5]

¶5 Meanwhile, on January 16, 2008, Wife had filed her petition for divorce in Minnesota and promptly served Husband.[6] On February 19, 2008, Wife requested temporary relief in Minnesota on the matters of child custody, visitation, and child support.[7] On March 16, 2008, Husband objected by letter to the Minnesota court's jurisdiction, alleging Wife had not resided in that state for 180 days prior to commencing the divorce action.[8]

¶6 On April 8, 2008, the Minnesota trial judge spoke with the Oklahoma trial judge on the telephone. They determined that the factual issue raised by Husband—whether Mother and the children resided in Minnesota 180 days prior to the commencement of the Minnesota divorce action—should be resolved "prior to the [Oklahoma] tribunal's consideration of the request to allow the [Minnesota] tribunal to retain jurisdiction based on convenient forum."[9] The Minnesota trial court set a hearing for May 27, 2008, for the purpose of resolving the factual dis-

6. R., p. 100, ¶4.

7. R., p. 67, ¶4.

8. Id. See footnote 3, supra.

9. Id. at ¶6.

pute regarding when Mother became a Minnesota resident.[10]

¶ 7 On May 23, 2008, Husband moved for dismissal of the Minnesota divorce action[11] and, on May 27, 2008, the Minnesota court held a hearing on the jurisdictional issues. Wife and her counsel were present. Husband was not present but was represented by his counsel.[12] In Husband's motion to dismiss, he argued that pursuant to 12 O.S.2001 § 2003, which states that in Oklahoma, a "civil action is commenced by filing a petition with the court," Minnesota should not be the court to determine the issues because he "commenced" his divorce action before Wife commenced hers.[13]

¶ 8 On May 29, 2008, the Minnesota court's order was filed, finding that Wife and the children moved to Minnesota on June 12 and that Wife moved her belongings on July 19, 2007. The Minnesota court concluded that at the time Wife filed for divorce in Minnesota, the children had resided in Minnesota for more than 180 days[14] and that Minnesota is, therefore, their home state.[15] Husband did not appeal.

¶ 9 On June 27, 2008, Husband filed an "Application for Temporary Order" in his Oklahoma case, requesting custody of the children or joint custody and that child support be set within the Oklahoma child support guidelines.[16] Application of the Oklahoma guidelines results in a significantly lower child support obligation amount for Father to pay, which Father admits.[17] On July 9, 2008, the Oklahoma trial court ordered the parties to appear on July 22, 2008, "to show cause why jurisdiction should not be relinquished to State of Minnesota."[18]

¶ 10 At the July 22, 2008 hearing, the trial court stated that it would not allow re-litigation of the facts regarding when Wife and the children moved to Minnesota that the Minnesota court had decided, "but would hear argument as to the law and the interpretation of the UCC JEA as it applied to those facts."[19] The purpose of the hearing was to "determine if there was cause why the order entered in a pending case in Minnesota involving these parties should not be honored, as far as jurisdiction in this case or between these parties, under the UCC JEA."[20] At the end of the July 22, 2008 hearing, the trial court set a hearing for September 2, 2008, to hear arguments as to the "issue of convenient forum."[21]

¶ 11 On September 2, 2008, the trial court held the hearing and determined that for purposes of child custody, Oklahoma is an inconvenient forum and that the proceeding in Oklahoma "should be stayed to allow Minnesota to determine the issue of child custody,"[22] pursuant to UCCJEA.

THE COURT:.... So I really think that ... it kind of comes down to the nature and location of the evidence required to resolve the pending litigation including testimony of the child[ren.]

. . . .

The bottom line, the fact of the matter though is that the children have been in Minnesota for 13 months now. They've

10. R., p. 68, ¶ 7.

11. R., p. 107.

12. R., p. 92.

13. By contrast, in Minnesota, a dissolution action "shall be commenced by personal service of the summons and petition...." Minn.Stat. § 518.09.

14. R., p. 93, ¶ 4.

15. R., p. 94. This order was amended to correct errors, in an amended order, filed on June 18, 2008, in Minnesota. R., p. 99.

16. R., pp. 96–97.

17. Transcript of September 2, 2008 hearing, pp. 46–47.

18. R., p. 103.

19. Transcript of July 22, 2008 hearing, p. 3. The "UCCJEA" refers to the Uniform Child Custody Jurisdiction and Enforcement Act, 43 O.S.2001 §§ 551–101 et seq. (UCCJEA).

20. Transcript of July 22, 2008 hearing, p. 3.

21. Transcript of July 22, 2008 hearing, p. 18; R., pp. 149–151.

22. Transcript of September 2, 2008 hearing, pp. 62–63.

completed a year of school there and are starting another year of school there.

I know from experience that the most pertinent information for a Court to consider in a custody determination is the more recent information as opposed to the historical information.

. . . .

And a lot of it is going to, from what I've heard, is going to come down to . . . where the children will be happiest as far as the primary custody. And I agree that it's less convenient to have them come here to tell this Court what their input is that [Husband] wants them to have, than for him to go there and have that input given to the Court in Minnesota.

I find that that factor is the one that tips the balance in favor of this being an inconvenient forum, and I believe under the statutes then this proceeding should be stayed to allow Minnesota to determine the issue of child custody.

. . . .

. . . This ruling does not affect the divorce case.

And I'll set that for whatever proceedings are appropriate on motion of either party.[23]

The written order reflecting this ruling, which did not address child support, was filed on September 5, 2008.[24] No one challenged this order.

¶ 12 On September 16, 2008, Husband appeared specially before the Minnesota court to challenge the jurisdiction of the Minnesota court over child support pursuant to UIFSA.[25] In its "Findings and Order," filed on October 10, 2008,[26] the Minnesota court granted temporary joint legal custody of the children, with primary physical custody to Wife.[27] The Minnesota order states that the "contested issue squarely before the Court is whether this Court has jurisdiction to establish Husband's child support obligation."[28] The Minnesota court considered Minn.Stat. § 518C.204, entitled "Simultaneous Proceedings in Another State"[29] and found that because Husband's petition for divorce did not include a specific request for relief in the form of a child support order, Wife's divorce petition, requesting a child support order, was filed prior to Husband's request for such a ruling.[30] The Minnesota court, therefore, found it had jurisdiction over both the child custody and child support issues and entered

---

23. Transcript of September 2, 2008 hearing, pp. 60–63.

24. R., p. 164.

25. R., pp. 170, 176.

26. R., p. 179. The order was also filed in the Oklahoma proceeding on October 23, 2008.

27. R., p. 181.

28. *Id.*

29. Section 518C.204 provides:

(a) A tribunal of this state may exercise jurisdiction to establish a support order if the petition or comparable pleading is filed after a petition or comparable pleading is filed in another state only if:

(1) the petition or comparable pleading in this state is filed before the expiration of the time allowed in the other state for filing a responsive pleading challenging the exercise of jurisdiction by the other state;

(2) the contesting party timely challenges the exercise of jurisdiction in the other state; and

(3) if relevant, this state is the home state of the child.

(b) A tribunal of this state may not exercise jurisdiction to establish a support order if the petition or comparable pleading is filed before a petition or comparable pleading is filed in another state if:

(1) the petition or comparable pleading in the other state is filed before the expiration of the time allowed in this state for filing a responsive pleading challenging the exercise of jurisdiction by this state;

(2) the contesting party timely challenges the exercise of jurisdiction in this state; and

(3) if relevant, the other state is the home state of the child.

30. As discussed *infra* at p. 19, n. 62, the Minnesota court erroneously interpreted Oklahoma law. *See* Title 43 O.S. Supp.2009 § 112(A)(1) (inherent in the filing of a divorce action in which there are minor children of the marriage is the trial court's duty to "make provision for . . . custody, medical care, support and education of the children. . . ."). No "specific request" for the relief of a child support order is necessary if there are minor children of the marriage listed in the petition.

its order as to each requested relief.[31] Husband did not appeal this child support order.

¶ 13 Following the entry of that Minnesota order, Husband filed a motion in the Oklahoma court, on November 13, 2008, to set a specific custody and visitation schedule and to establish and set child support.[32] The trial court set the motion for hearing on December 22, 2008. On December 17, 2008, Wife filed her objection[33] to Husband's motion regarding specific custody, visitation, and child support, citing the Minnesota court's October 10, 2008 order granting temporary joint custody to the parties, with temporary physical custody to Wife, granting Husband reasonable parenting time, and ordering Husband to pay monthly child support for the children in the amount of $1,562.

¶ 14 The trial court denied Husband's motion to set a specific custody and visitation schedule.[34]

BY THE COURT:

I don't remember there having been an objection to this Court proceeding with the divorce itself.

[HUSBAND'S COUNSEL]: Right.

THE COURT: Is that, am I remembering, recalling that correctly[?]

[WIFE'S COUNSEL]: Right. I don't know that that has ever really been an issue.[35]

. . . .

THE COURT: First of all as to the ... visitation issue that ... was specifically filed and is before the Court this morning. I just don't as a practical matter see how you can say one Court's going to determine custody and the other one's going to determine visitation. It's just impractical. You have the same issues in the visitation determination as you do in a custody determination.

The Minnesota Court did address visitation in its order. I understand the prob-

lem with that.... I don't know what's been said between parties or counsel as far as trying to, trying to get the visitation arranged. [I] ... don't know why it's not working.

. . . .

But I don't think that the proper relief ... is asking this Court to insert itself into the visitation schedule, the issue.

The UCC JEA that we're operating under defines a child custody proceeding as a proceeding in which legal custody, physical custody, or visitation with respect to a child is in issue.

And ... I've determined and the Minnesota Court has determined that those, that the child custody proceeding, the jurisdiction for that is in Minnesota. And that includes visitation.

. . . .

But I don't think that it's appropriate, efficient, proper, or legal for this Court to say I defer to Minnesota Court on custody, but I'm going to set visitation. And to a lesser extent as far as application of logic *that same thing applies to child support issue.*

. . . .

[HUSBAND'S COUNSEL]:.... I think the child support, I might just re-urge that but I'll do that in a different manner.

THE COURT: All right.[36]

¶ 15 By order filed on March 2, 2009,[37] following the pre-trial conference, the trial court ordered, for March 18, 2009, a "jurisdictional hearing on the issue of child support" and ordered the case "set for trial [divorce and property division]" for March 30. At the March 18, 2009 hearing, the following transpired:

THE COURT: So you're not disagreeing that there was a finding here that Oklahoma was the home state. It seems

---

**31.** R., pp. 182–187.

**32.** R., p. 197.

**33.** R., p. 205.

**34.** R., p. 219.

**35.** Transcript of December 22, 2008 hearing, pp. 11–12.

**36.** Transcript of December 22, 2008 hearing, pp. 13–16 (emphasis added).

**37.** R., p. 254.

both, both state[s] found they were the home state.

[WIFE'S COUNSEL]: That's correct, Your Honor.

. . . .

THE COURT:. . . . And my recollection of the orders involved is that that finding was made based on a determination that the Minnesota order misconstrued or misapplied Oklahoma's statute on filing and service and determine[d] when the matter is considered pending in Oklahoma.

So with those findings then [12 O.S.2001 § 601–]204 B 3 isn't applicable. And the provisions of UIFSA then regarding the child support determination being made in the home state of the obligor would control. So it appears that under UIFSA Oklahoma would be the proper venue for determining child support.

It['s] . . . a little bit counter intuitive to me in that, you know, it seems that the Court determining custody and visitation should also determine support. But I think that UIFSA contemplates that, that it, the support determination can be made in a different venue than—or jurisdiction than the custody, visitation issues.

So as far as the parties have said here that the custody visitation [sic] is not going to be a disputed issue and it would just be a matter of the application of the appropriate state's structure and guidelines for calculati[ng] an amount. And based on what I've had provided to me I found that we can do that in Oklahoma.[38]

In its order filed on March 24, 2009,[39] the trial court memorialized its ruling, finding

that Oklahoma was "a proper venue for hearing the issue of child support."

¶ 16 On March 30, 2009, the issues of child support and property division were tried to the court—the child support issue over the objection of Wife.[40] Husband testified that the monthly mortgage payment on the marital home is $878.[41] Husband paid the mortgage payments from the time of the parties' separation until the trial.[42] He lives in the marital home.[43] Husband is a former member of the military who is employed now as a defense civilian employee of the U.S. Department of the Army, earning an adjusted base pay of $75,430.[44] He also receives "voluntary separation incentive" monies from the military, which he elected to receive in yearly sums, upon which he pays income tax, instead of in a lump sum.[45]

¶ 17 Husband testified that he would like to sell the house, pay off the mortgage, and equally split any amounts remaining. He would like the mortgage payments shared equally until the house sells.[46]

¶ 18 Wife testified she is currently a middle school math teacher for a private school in Minnesota. Because she has no state license, she is limited to teaching in private schools. She has eight years of previous teaching experience.[47] Shortly before the trial, she was notified that her teaching contract had not been renewed.[48] Wife testified she was making $38,400 from her teaching contract, with an additional $600 earned for teaching religious education night classes.[49] Wife had previously been employed in the military, where the couple met.[50] She had nine and a half years of service and achieved the "rank of Major."[51] Wife testified that

38. Transcript of March 18, 2009 hearing, pp. 11–13.

39. R., p. 266; Transcript of March 18, 2009 hearing, pp. 10–13.

40. R., p. 267; Transcript of March 30, 2009 nonjury trial (Tr.), p. 3.

41. Tr., p. 11. He also testified that, more precisely, it was $878.58. Tr., p. 58.

42. Tr., p. 11.

43. Tr., p. 50.

44. Tr., pp. 6, 8.

45. Tr., pp. 21–22, 36–37.

46. Tr., pp. 12, 13.

47. Tr., p. 87.

48. Tr., p. 61.

49. Id.

50. Tr., p. 64.

51. Tr., p. 88.

she has two Master's degrees—one in education and one in human resources.[52] The highest annual salary she earned for previous human resources jobs was $42,000.[53]

¶ 19 Wife testified she believes a 70/30 percentage split on the mortgage payments would be fair, with Husband paying the larger portion, "just like our income and ability to pay."[54] She also testified as follows:

[HUSBAND'S COUNSEL]: Well, you—how about we do this. How about we just move out of the house and you both make half the payment, if you want to do that?

[WIFE]: Okay. Yeah, we can do that.

[HUSBAND'S COUNSEL]: You can split the profit 50/50?

[WIFE]: That's fine, yeah.[55]

¶ 20 The trial court's ruling was announced from the bench the same day Wife and Husband testified under oath. No other witnesses appeared. As the trial judge was announcing his ruling from the bench as to the mortgage payment on the marital home, Husband spoke up:

THE COURT:.... The home to be sold and proceeds split. And I, I agree that it's equitable since [Husband] is living there that it should be on the 70/30 propositional basis on the payments.[56]

....

[WIFE'S COUNSEL]: I'm trying to make sure I understand on the house. As long as he's living there this payment—

THE COURT: Yeah, it doesn't make any sense not to be living there and making a payment somewhere else. So it's the 70/30.

[WIFE'S COUNSEL]: Okay.

THE COURT: Based on that assumption, on the future payments.

[HUSBAND'S COUNSEL]: But if he doesn't live there.

THE COURT: He doesn't—

[HUSBAND'S COUNSEL]: It still would be 70/30 if he doesn't live there, if he moves out. He's got to find another place in contemplation of selling this, until he finds something and gets out. Should it be—

[WIFE'S COUNSEL]: I was just trying to make sure I understood your ruling.

THE COURT: That was the intent.

[HUSBAND]: Your Honor, I'm what they call a mandatory deployment person. I mean I, I don't have a problem paying 70/30 while I'm living there but I can be deployed any time.

THE COURT: If that occurs then 50/50. But I mean I don't think, I mean, as far as just to move into someplace else because at some point in the future it's going to be sold, that doesn't make sense. But if deployed, certainly, then that would change, change that to where it would be equitable ... to make the payments 50/50.

[WIFE'S COUNSEL]:.... How do we account for the benefit he gets from living there while we're waiting to sell it.

THE COURT: That's why I said 70/30.

[WIFE'S COUNSEL]: Okay.

[HUSBAND'S COUNSEL]: She's also had a reduction in the principal for 20 months that he paid and also she got a benefit, trade off.

THE COURT: Anything else.

[WIFE'S COUNSEL]: *Nothing from the [Wife].* I think I understand the Court's ruling.

THE COURT: Deployment is different from just moving out. I mean it could take no telling how long to sell. So just to move into another place and incur another payment.[57]

¶ 21 The Decree, filed on December 16, 2009, incorporates the Minnesota court's custody and visitation schedule and provides, in pertinent part, as follows:

5. The custody determination in this case was deferred to the Minnesota Court based on previous findings and that por-

52. Tr., p. 87.

53. Tr., p. 89.

54. Tr., p. 65.

55. Tr., p. 97.

56. Tr., p. 122.

57. Tr., pp. 124–126 (emphasis added).

tion of the Minnesota custody and visitation order having to do with custody and visitation is set out and attached hereto as Exhibit "A".

6. Over [Wife's] objection, Oklahoma has continuing and exclusive jurisdiction over the issue of child support as previously ruled on in this court on March 18, 2009. Child Support should be set in accordance with the Oklahoma Child Support Guidelines and Computation Form and as specifically Ordered and set-out herein below.[58]

. . . .

Therefore, the Court **Orders** that the [Husband] shall pay to the [Wife] child support. . . . The monthly child support payment of . . . $1,029.40. . . . [59]

. . . .

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED BY THE COURT** that the marital home of the parties . . . shall be immediately placed for sale. That upon sale of the home, and upon payment of any monies due and owing on the marital home, and upon payment in full of all costs and expenses related to the sale, then and in that event any and all remaining proceeds from the sale of the marital home, shall be split equally between the parties, and paid fifty percent (50%) to the [Husband] and fifty percent (50%) to the [Wife.]

As to the division of the monthly mortgage payments as they become due and owing during the time period that the house is placed on the market for sale through and until the closing date of the sale, the Court **FINDS AND ORDERS** that during the time period that the house is placed on the market for sale through and until the closing date of the sale, all those monthly mortgage payments(s) shall be made seventy percent (70%) by [Husband] and thirty percent (30%) by [Wife], as the same become due and payable. Each party holding the adverse party harmless from their percentage share, provided that should [Husband] be deployed

prior to the sale of the house, the monthly mortgage payments which become due subsequent to the time of deployment shall be paid fifty percent (50%) by the [Husband] and fifty percent (50%) by the [Wife].[60]

¶ 22 From the Decree, Wife appeals. She asserts that the trial court lacked the jurisdiction and authority to issue a child support order and that the existing Minnesota court's child support order should control pursuant to UIFSA. She also challenges, as an abuse of discretion, the portion of the Decree that orders her to pay 50 percent of the marital home mortgage payments in the event Husband is deployed before the home is sold. Both parties request appeal-related attorney fees.

## STANDARD OF REVIEW

¶ 23 Jurisdictional matters are subject to *de novo* review on appeal. *Seneca Telephone Co. v. Miami Tribe of Oklahoma*, 2011 OK 15, ¶ 3, 253 P.3d 53, 54. Similarly, the trial court's interpretation of state statutes presents an issue of law, which also receives nondeferential review on appeal. *State of Oklahoma ex rel. Oklahoma State. Department of Health v. Robertson*, 2006 OK 99, ¶ 5, 152 P.3d 875, 877.

¶ 24 If a statute is plain and unambiguous, no judicial construction is necessary. It will receive the effect its language dictates. *In the Matter of BTW*, 2010 OK 69, ¶ 12, 241 P.3d 199, 205.

¶ 25 Regarding the trial court's equitable division of marital property, the trial court is vested with wide discretion in dividing property. The trial court's judgment will not be disturbed on appeal unless found to be clearly against the weight of the evidence or contrary to law. The burden of showing that the judgment is clearly against the weight of the evidence is on the appellant. *Manhart v. Manhart*, 1986 OK 12, ¶ 5, 725 P.2d 1234, 1236.

---

**58.** R., p. 335.

**59.** R., pp. 337–338.

**60.** R., pp. 339–340. The Minnesota court's final order on child support was filed on June 12, 2009. R., p. 293.

¶ 26 The trial court's decision whether to admit or exclude evidence will not be reversed absent a finding of a clear abuse of discretion. *Cities Service Co. v. Gulf Oil Corp.*, 1999 OK 14, ¶ 32, 980 P.2d 116, 132.

## ANALYSIS

### I. The trial court's jurisdiction to enter orders related to child support

█ ¶ 27 Enacted in 1994 by the Oklahoma Legislature, the Uniform Interstate Family Support Act (UIFSA), 43 O.S.2001 §§ 601–100 et seq. (as subsequently amended), is designed to eliminate the problems inherent with multiple child support orders in different jurisdictions and to provide that only one child support order is in effect at any one time.[61] To enforce an order under UIFSA, the issuing tribunal must have proper jurisdiction and must have issued the order in accordance with the rules set forth in UIFSA.

¶ 28 In this case, both Minnesota and Oklahoma asserted jurisdiction and issued child support orders—Minnesota, in its October 10, 2008 order, and Oklahoma in the Decree filed on December 16, 2009. Wife asserts that the Oklahoma court was without jurisdiction to enter a child support order under UIFSA because she filed the first pleading requesting child support on February 19, 2008. She claims this based on the fact that Husband did not specifically request the court adjudicate child support in his petition filed in Pittsburg County, Oklahoma, on January 10, 2008, and because she was not served with summons until March 24, 2008.[62]

█ ¶ 29 We disagree with this argument. Husband's divorce petition, filed on January 10, 2008, listed the two children of the marriage. In Oklahoma, filing a petition commences an action pursuant to 12 O.S.2001 § 2003 ("A civil action is commenced by filing a petition with the court.").[63] Although Husband's petition made no specific mention or request for child support relief, the fact that he filed a divorce action and listed the children of the marriage in it gave rise to the trial court's duty to adjudicate matters relating to children of divorcing parents. Title 43 O.S. Supp.2009 § 112, provides, in pertinent part:

> A. A petition ... for a divorce ... must state whether or not the parties have minor children of the marriage. If there are minor children of the marriage, the court:
>
> 1. Shall make provision for ... custody, medical care, support and education of the children.... [64]

Therefore, Wife's reliance on a "first filed" theory is misplaced.

█ ¶ 30 Generally, UIFSA provides for exclusive jurisdiction over child support orders. At the outset, we note that 43 O.S. Supp.2004 § 601–207(A) provides that if "only one tribunal has issued a child support order, the order of that tribunal controls and must be so recognized." At the time the trial court granted the divorce in his ruling from the bench and included an order for child support, on March 30, 2009, there had already been a child support order filed in Minnesota for nearly six months. The trial court disregarded this fact and entered its own child support order.

¶ 31 Further, when we consider the fact that, by virtue of the Decree, there are now two child support orders from two states, 43

---

**61.** *See* Oklahoma Introductory Comment on UIFSA, 43 O.S.2001; *Etter v. Etter*, 2001 OK CIV APP 18, ¶ 5, 18 P.3d 1088, 1089 (citing *Linn v. Delaware Child Support Enforcement*, 736 A.2d 954, 961 (Del.1999)).

**62.** The Minnesota court found that Oklahoma law requires service of a summons and petition to meet the definition of commencement of an action, as required by Minnesota statutes. Oklahoma statutes differ, however, and require only the filing of a petition to commence an action. Thus, the Minnesota court misinterpreted Oklahoma law.

**63.** By contrast, in Minnesota, an action commences when summons is served upon a defendant with a copy of the complaint. Minnesota Court Rules 2010, Minnesota Rules of Civil Procedure, Rules 3.01 and 3.02.

**64.** "In a divorce action, the court is under a statutory duty to provide for support of the minor children of the parties." *Parkey v. Parkey*, 1962 OK 110, ¶ 18, 371 P.2d 711, 714.

O.S.2001 § 601–204 (emphasis added) addresses that situation as follows:

> B. A tribunal of this state *may not exercise* jurisdiction to establish a support order if the petition or comparable pleading *is filed before* a petition or comparable pleading is filed in another state *if:*
>
> 1. The petition or comparable pleading in the other state is filed *before the expiration of the time allowed in this state* for filing a responsive pleading challenging the exercise of jurisdiction by this state;
>
> 2. The contesting party *timely challenges* the exercise of jurisdiction in this state; *and*
>
> 3. *If relevant, the other state is the home state* [65] *of the child.*

¶ 32 The facts in this case indicate that Husband's petition was filed six days before Wife's petition was filed. Therefore, a "tribunal of [Oklahoma] *may not exercise* jurisdiction to establish a support order if the [Oklahoma] petition *is filed before* a petition in [Minnesota] if" the three parts of 43 O.S. 2001 § 601–204(B) are satisfied.

¶ 33 Regarding subsection 1 of *43 O.S.2001 § 601–204* (B): the Minnesota petition, filed on January 16, 2008, was filed before Wife was even served with Husband's petition and, therefore, was filed *"before the expiration of the time allowed in [Oklahoma]* for filing a responsive pleading challenging the exercise of jurisdiction by [Oklahoma]." Regarding subsection 2 of 43 O.S.2001 § 601–204(B): Wife *"timely challenge[d]* the exercise of jurisdiction in Oklahoma" by her filing of a divorce petition in Minnesota invoking jurisdiction in that state; in her affidavit dated April 2, 2008;[66] and, in the letter from her counsel to the trial court in Oklahoma, dated April 14, 2008.[67]

¶ 34 Regarding subsection 3 of 43 O.S.2001 § 601–204(B), the parties had a hearing in Minnesota on May 27, 2008. Both parties were represented by counsel. The Minnesota trial court determined[68] that Wife and the children had moved to Minnesota on June 12 and that, therefore, Minnesota is the children's home state. This order was not appealed.

¶ 35 All three of the subsections are satisfied; therefore, the trial court in Oklahoma should not have entered another child support order, and the Minnesota child support order should govern. Section 518C.205 of the Minnesota statutes provides that:

> (a) A tribunal of this state [Minnesota] issuing a support order [October 23, 2008] consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:
>
> (1) as long as this state remains the residence of the ... the child for whose benefit the support order is issued....

We find, therefore, the trial judge erred by including a child support order in the Decree, and we reverse that portion of the Decree.

### II. Division of the Marital Property Mortgage Payments

■ ¶ 36 As to the division of the monthly mortgage payments on the marital residence, the trial court found that during the time period that the house is placed on the market for sale through and until the closing date of the sale, Husband must pay 70 percent of the monthly payment each month and Wife must pay 30 percent, "provided that should [Husband] be deployed prior to the sale of the house, the monthly mortgage payments which become due subsequent to the time of deployment shall be paid fifty percent (50%) by the [Husband] and fifty percent (50%) by the [Wife]." As the trial court was announcing its ruling from the bench, Husband spoke up and asked about mortgage payment percentages if he were deployed and not living in the home until it sold.

¶ 37 On appeal, Wife complains that the issue of Husband's deployment and its effect on the payment of the mortgage was improp-

---

65. " 'Home state' means the state in which a child lived with a parent ... for at least six (6) consecutive months immediately preceding the time of filing of a petition or comparable pleading for support...." 43 O.S. Supp.2004 § 601–101(4); Minn.Stats. § 518C–101(d).

66. R., p. 75.

67. R., p. 63.

68. R., pp. 94, 99.

erly brought to the trial court's attention because it was during the announcement of the ruling that Husband spoke up and commented on his deployment status. Wife asserts Husband's statement was improperly considered by the trial court because it was not "evidence" adduced during direct or cross-examination. We find Wife's argument unpersuasive.

¶ 38 Wife does not dispute the accuracy of the fact that Husband is deployable. Further, at the time Husband spoke up, Wife's counsel had an opportunity to object, or ask for an opportunity to question him, and did not:

[WIFE'S COUNSEL]:.... How do we account for the benefit he gets from living there while we're waiting to sell it.

THE COURT: That's why I said 70/30.

[WIFE'S COUNSEL]: Okay.

[HUSBAND'S COUNSEL]: She's also had a reduction in the principal for 20 months that he paid and also she got a benefit, trade off.

THE COURT: *Anything else.*

[WIFE'S COUNSEL]: *Nothing from the [Wife].* I think I understand the Court's ruling.

THE COURT: Deployment is different from just moving out. I mean it could take no telling how long to sell. So just to move into another place and incur another payment.[69]

¶ 39 In fact, Wife testified she believes a 70/30 percentage split on the mortgage payments would be fair, with Husband paying the larger portion because he lives in the house.[70] She testified as follows:

[HUSBAND'S COUNSEL]: Well, you— how about we do this. How about we [(Husband)] just move out of the house and you both make half the payment, if you want to do that?

[WIFE]: Okay. Yeah, we can do that.

[HUSBAND'S COUNSEL]: You can split the profit 50/50?

[WIFE]: That's fine, yeah.[71]

¶ 40 Wife did not preserve the evidentiary issue for appeal. Title 12 O.S.2001 § 2104, provides, in pertinent part:

A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and:

1. If the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context....

¶ 41 Nothing in the record indicates that Husband's statements regarding deployment were objected to, despite there being opportunity to do so. Wife's counsel did not request an opportunity to cross-examine Husband as to his deployment status. For these reasons, the issue was not timely preserved for appeal.

■ ¶ 42 Even if Wife had timely objected, a trial court has discretion to hear additional evidence after the close of evidence. The Oklahoma Supreme Court, addressing a similar scenario, stated:

It appears from the record that both sides had rested and the court was preparing the instructions and defendant had consented for its witnesses to go away and they were excused. The court allowed the request of plaintiff to reopen over objection of defendant, and testimony was given by the plaintiff as to his receiving treatment when he reached the hospital and he was relieved of his pain and suffering. The ground of the objection was that the witnesses were excused and the defendant could not answer this testimony, but it is not stated what witness of those excused would have testified, and what he would have said in answer to plaintiff's testimony. Allowing the case to be reopened and testimony introduced was in the reasonable discretion of the trial court, and without it is made to appear that the court abused its discretion to the prejudice of the opposing party, the act of the court in reopening the

---

**69.** Tr., pp. 124–126 (emphasis added).

**70.** Tr., p. 65.

**71.** Tr., p. 97.

case will not be disturbed by this court on appeal.

*St. Louis–San Francisco Railway Co. v. Clark,* 1924 OK 881, ¶ 24, 104 Okla. 24, 229 P. 779, 783–784 (Syl.6). In this case, Wife presents no argument or information that shows the trial court abused its discretion to the prejudice of Wife.

¶ 43 Lastly, Wife fails to show how the trial court's division of the mortgage payment is an abuse of discretion. The proceeds from the sale of the house are to be divided equally, with Husband paying the greater share of the mortgage when he lives in the house. We cannot say an equal sharing of the mortgage payment when Husband is deployed, when considered along with all the testimony as to the parties' desired division of property, is not fair and equitable. A trial court has broad discretionary power to equitably divide the marital estate, which should be done in a fair and equitable manner. *Teel v. Teel,* 1988 OK 151, 766 P.2d 994. The marital estate need not be equally divided, but the division must be equitable. *Wood v. Wood,* 1990 OK CIV APP 49, 793 P.2d 1372. We affirm this portion of the Decree.

### III. Requests for Attorney Fees on Appeal

¶ 44 Both Husband and Wife assert in their respective briefs that "as the prevailing party," they should be awarded attorney fees and costs on appeal.[72] We disagree.

¶ 45 An attorney fee "claimed in matrimonial disputes never depends on one's status as prevailing party in the case." *Larman v. Larman,* 1999 OK 83, ¶ 20, 991 P.2d 536, 543. Rather, in making an attorney fee award in a divorce case, a court must consider all the circumstances in the case and balance the equities. *Thielenhaus v. Thielenhaus,* 1995 OK 5, 890 P.2d 925. The balance of those equities does not tip in favor of either party; therefore, we deny the requests.

### CONCLUSION

¶ 46 Based on our review of the record and applicable law, we affirm the marital proper-

ty division portion of the Decree and reverse the portion of the Decree ordering child support. We deny each party's request for appeal-related attorney fees.

¶ 47 **AFFIRMED IN PART AND REVERSED IN PART.**

FISCHER, V.C.J., and WISEMAN, J., concur.

---

72. Wife's Brief–in–Chief, p. 31; Husband's Response Brief, p. 24.